# EXHIBIT F

```
J2411H1          SUPERIOR COURT, METROPOLITAN JUSTICE BUILDING        08/10/06
KERN CJIS                  IN AND FOR THE COUNTY OF KERN                13:40
ORGANIZATION: WM
```

CASE NO. HC009343 A      DATE: 08/10/06      TIME: 08:00 AM      DEPT.: RL

IN THE MATTER OF LUTHER, GARY BRIAN

JUDGE:   JOHN I KELLY, JUDGE          CLERK:   JENIFER GARDNER
REPORTER:                             BAILIFF:
NATURE OF PROCEEDINGS:
     HABEAS CORPUS.
     RULING

---

CDC ID NUMBER: E-98605.

PETITION FOR WRIT OF HABEAS CORPUS IS DENIED.

SEE RULING ATTACHED HERETO AND MADE A PART HEREOF.

COPY OF MINUTE ORDER SENT TO PETITIONER THIS DATE.

ENTERED ON CJIS BY JENIFER GARDNER - SCMET. ON
     08/10/2006.

---

MINUTE ORDER                                    PAGE     1

In re Gary Luther
KCSC #HC93-43

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The court has reviewed the petition for writ of habeas corpus which was filed on May 25, 2006. On July 10, 2006, the court, on its own motion, extended time to rule on the petition until August 24, 2006.

The background of this petition is as follows:

a. Petitioner is currently incarcerated at California State Prison in Soledad, California.

b. A jury convicted Petitioner of second degree murder. The jury also found that Petitioner used a gun within the meaning of section 12022.5(a). Petitioner appealed, and the appellate court affirmed the judgment.

c. On January 10, 2006, the Board of Parole Hearings (Board) found Petitioner unsuitable for parole. The Board deferred the next hearing for two years.

d. Petitioner contends that the Board improperly found him unsuitable for parole.

Petitioner fails to state a prima facie case for relief.

a. When considering parole for an indeterminate life inmate, the Board first determines suitability for parole. If it finds the inmate suitable, the Board establishes a parole release date. Conversely, if the Board concludes that public safety requires a lengthier period of incarceration, a parole will be denied. In making the determination, the Board considers all relevant, reliable information available, including the circumstances of the inmate's social history, past and present mental state, past criminal history, the commitment offense(s), the inmate's attitude toward the crime, and any other information that bears on the inmate's suitability for release. Cal. Code Reg., tit. 15, §2402(b).

b. There are some factors favorable to Petitioner as noted by the Board. In 2000, Petitioner had a minor 128, and Petitioner has had no 115s during the entire time that he has been incarcerated. A psychiatric report dated December 2005 is a favorable report. Petitioner has positive work records. Petitioner has made parole plans. But, the Board advised Petitioner to get the support letters updated.

c. After carefully considering all relevant information, the Board, however, found Petitioner's release from prison would pose an unreasonable risk of danger to society at this time.

d. The Board's decision was supported by some evidence. The Board found that Petitioner's commitment offense indicated unsuitability for parole. The Board found that the offense was carried out in an especially cruel manner. The Board found that the offense was

In re Gary Luther
KCSC #HC93-43

carried out in a manner which demonstrated an exceptionally callous disregard for human suffering in that the victim was found to have had sustained one gunshot wound to the head and three blunt force trauma wounds to the head. The Board found that Petitioner's motive for the crime was very trivial in relation to the offense. Petitioner owed a drug dealer money and he was concerned about that. The Board found that Petitioner's unstable social history associated with drugs and alcohol indicated unsuitability for parole. With respect to Petitioner's institutional behavior, the Board found that Petitioner had programmed in a limited manner considering the amount of time Petitioner had been in. The Board was also concerned that Petitioner failed to upgrade himself educationally and that he had not sufficiently participated in self-help programs. The Board concluded that Petitioner need some therapy in order to face, discuss and understand and cope with stress in a non-destructive manner. According to the Board's finding, Petitioner continues to be unpredictable and a threat to others until some progress is made.

e. Petitioner argues that the Board cannot continue to rely on the unchangeable fact of the criminal offense. This argument fails. California law does allow the Board to continue to look at the circumstances of the murder and allows the facts of the crime alone to support a sentence longer than the statutory minimum, even if everything else about the prisoner is laudable. See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1070-1071. Even though the Ninth Circuit opined that continuing reliance on the murder itself and past criminality to justify denying parole could result in a due process violation, *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910, 917, that dicta is not clearly established federal law. Moreover, the some evidence standard is extremely deferential to the original decision maker. See *Superintendent v. Hill* (1985) 472 U.S. 445, 454.

Accordingly, Petitioner has failed to state facts sufficient to warrant issuance of a writ of habeas corpus.

The petition is denied.

Dated: AUG 1 0 2006

Judge of the Superior Court

2

Name  GARY B. LUTHER

Address  Box 689   F-330U

 California State Prison

 Soledad, CA 93960-0689

CDC or ID Number  E-98605

MAY 1 9 2006

**FILED**
KERN COUNTY

MAY 2 5 2006

TERRY McNALLY, CLERK
BY _____ DEPUTY

SUPERIOR COURT OF KERN COUNTY

FOR THE STATE OF CALIFORNIA

*(Court)*

| | |
|---|---|
| GARY B. LUTHER<br>Petitioner<br> vs.<br><br>KANE (Warden)<br>Respondent | **PETITION FOR WRIT OF HABEAS CORPUS**<br><br>No.  HC 9343A<br>*(To be supplied by the Clerk of the Court)* |

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]    PETITION FOR WRIT OF HABEAS CORPUS    Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

See attached petition

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

See attached petition

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

See attached petition

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.  If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

Unavailable at this time

b. Result: Denied                                    c. Date of decision: Unavailable

d. Case number or citation of opinion, if known:     Unavailable

e. Issues raised:  (1)     Unavailable (Documents lost over period of years).

(2) _____ // _____

(3) _____ // _____

f. Were you represented by counsel on appeal?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

Unavailable

9. Did you seek review in the California Supreme Court?  ☒ Yes.  ☐ No.  If yes, give the following information:

a. Result: Relief denied                              b. Date of decision: Unavailable

c. Case number or citation of opinion, if known:      Unavailable

d. Issues raised:  (1) _____ // _____

(2) _____ // _____

(3) _____ // _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

Does not apply to this petition/cause of action

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

Does not apply to this petition/cause of action

b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.     Does not apply

*Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]                    **PETITION FOR WRIT OF HABEAS CORPUS**                    Page five of six

Comes now, Gary B. Luther, Petitioner in pro se, and hereby petitions this Honorable Court for a writ of habeas corpus on Petitioner's Parole Board Hearing, held on January 10, 2006, and finalized on May 10, 2006.

I

CALIFORNIA PENAL CODE SECTION §3041(a)(b) CREATES A PROTECTABLE LIBERTY INTEREST AT A PAROLE SUITABILITY HEARING, AND A REASONABLE EXPECTATION OF A PAROLE RELEASE DATE. THE COMMANDING WORD "SHALL" CLEARLY ESTABLISHES THIS EXPECTATION.

II

THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BY CONTINUOUSLY USING UNCHANGING FACTORS TO DENY PAROLE, AND BY MIS-APPLYING THE TERM "PARTICULARLY EGREGIOUS."

III

THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BY MIS-APPLYING THE SOME EVIDENCE STANDARD AT A PAROLE SUITABILITY HEARING.

IV

THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BY THE UNCONSTITUTIONAL APPLICATION OF PENAL CODE SECTION §3041(b).

V

THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION WHEN THEY FAILED TO CONSIDER A PAROLE RELEASE DATE UNDER PENAL CODE SECTION §3041(a).

VI

THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BY APPLYING TITLE 15 C.C.R §§2400-2411 TO OVER-RIDE AND CONTROL PENAL CODE SECTION §3041(a)(b).

//
//
//

CALIFORNIA PENAL CODE SECTION §3041(a)(b) CREATES A PROTECTABLE LIBERTY INTEREST AT A PAROLE SUITABILITY HEARING, AND A REASONABLE EXPECTATION OF A PAROLE RELEASE DATE. THE COMMANDING WORD "SHALL" CLEARLY ESTABLISHES THIS EXPECTATION.

A parole liberty interest involves values protected by the due process clauses under the U.S. Constitutions Fifth and Fourteenth Amendments.

While there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence, a state's statutory parole scheme, if it uses mandatory language, "creates a presumption that parole release will be granted" when or unless certain designated findings are made, and thereby gives rise to a federal constitutionally protected liberty interest. See, Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7, 11-12 (1979), finding Nebraska parole statute, which provides that the Board "shall" release prisoner subject to certain restrictions, creates due process liberty interest in release on parole. See also, Board of Pardons v. Allen, 482 U.S. 369, 376-378 (1987), finding Montana parole statute, which provides that the board "shall" release prisoner subject to certain restrictions, creates a due process liberty interest in release on parole. In such cases, a prisoner has a legitimate expectation in parole that cannot be denied without adequate procedural due process protections. Id. at pp.373-381; Greenholtz, 442 U.S. at pp.11-16.

California parole scheme is set forth in California Penal Code §3041. Section §3041(b) states that the board:

> "Shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be set at this meeting."

However, if the Board finds the individual eligible for parole pursuant to section §3041(b), then the Board must set a minimum parole eligibility date pursuant to section §3041(a) with an aim to uniform terms for individuals with

1  similar offenses. See, In re Dannenberg, 34 Cal.4th 1061, 1098 (Cal. 2005). As

2  stated in Dannenberg, "subsection (a) only applies if (b) does not apply."

3  In McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002), the Ninth Circuit

4  found that Penal Code §3041(b) has the same kind of mandatory language as the

5  parole statutes found in Allen and Greenholtz to give rise to a protected liberty

6  interest in release on parole. McQuillion, 306 F.3d at pp.901-902, the Court

7  concluded that "California's parole scheme gives rise to a cognizable liberty

8  interest in release on parole." Id. at p.902. The Court further stated that,

9  in light of Greenholtz and Allen, this holding is based on clearly established

10  federal law of the United States Supreme Court, within the meaning of AEDPA.

11  The Ninth Circuit Court of Appeals reaffirmed its holding in McQuillion a year

12  later, finding that §3041(b) contains mandatory language which gives rise to

13  federally protected liberty interest in release on parole. See, McQuillion, 306

14  F.3d at pp.914-916, finding that the Board's decision that petitioner was

15  unsuitable for parole implicated his federally protected liberty interest in

16  release on parole.

17  Therefore, it is well established law in the United States Supreme Court

18  and the Ninth Circuit Court of Appeals that Penal Code §3041(b) gives rise to

19  a federally protected liberty interest on parole, an interest implicated by the

20  Board's decision in this case that petitioner is unsuitable for parole.

21  THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S
   DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS
22  OF THE U.S. CONSTITUTION BY CONTINUOUSLY USING UNCHANGING
   FACTORS TO DENY PAROLE, AND BY NOT ACCURATELY APPLYING
23  "PARTICULARLY EGREGIOUS".

24  Petitioner will herein establish that his U.S. Constitutional rights of

25  due process are continuing to be violated, by denying parole to petitioner on

26  his commitment offense. See, Parole Board transcripts. (Exhibit "A", pp.47,

27  51-53), and other unchanging factors.

28  Petitioner contends that, the California Court of Appeals for the Fourth

1    District has held that the Board of Parole Hearings boilerplate findings

2    characterizing the crime as "exceptionally callous disregard for human suffering",

3    committed in a "dispassionate and calculated manner" were unsupported by any

4    evidence. In In re Richard Shaputis, No. D046356, California Court of Appeal,

5    Fourth District, First Division, December 28, 2005. The court relied to a large

6    extent on the reasoning of In re Smith, 14 Cal.App.4th 343 (2003), and In re

7    Scott, (2004) 119 Cal.App.4th 871, 884 (Scott) stating:

8    　　　　[T]here is no evidence Shaputis "tormented, terrorized, or injured
　　　　[his victim] before deciding to shoot [her]; or that he gratuitously
9    　　　　increased or unnecessarily prolonged her pain and suffering...Was the
　　　　crime callous? Yes. However, are the facts of the crime some evidence
10   　　　　that [Shaputis] acted with exceptionally callous disregard for [the
　　　　victim's] suffering; or do the facts distinguish this crime from other
11   　　　　second degree murders as exceptionally callous? No. "[Citation.]" (Id.
　　　　at p.367).
12

13       Regarding the findings that Shaputis crime was "dispassionate or calculated",

     the court found:
14

15   　　　　The BPT's findings that Shaputis acted in a dispassionate and calculated
　　　　manner, in addition to being inconsistent with the jury's verdict
16   　　　　acquitting him of first degree murder (cf. Scott, supra, 119 Cal.App.4th
　　　　at pp.889–890), is unsupported by (and indeed may be irreconcilable
17   　　　　with) the evidence on which BPT purported to rely. Accordingly, the
　　　　BPT's reliance on this factor was arbitrary and capricious. (Scott,
　　　　at pp.891–892).
18

19       Additionally, the court found that the Board's reliance on the unsuitability

20   factor "unstable or tumultous relationships" (Calif. Code of Regs., Title 15,

21   Division II, Art. II, Section §2402(c)(3) to deny parole cannot justify a finding

22   of unsuitability unless the inmate CURRENTLY poses an unreasonable threat to

     others based on some evidence of a current inability to maintain sobriety. The
23
     court stated:
24

25   　　　　We are similarly convinced the BPT's reliance on Shaputis former
　　　　alcoholism - related violence toward his marital partner, the sole
26   　　　　evidence conceivably supporting the findings he had "unstable or
　　　　tumultous relationships" with other persons, cannot justify a finding
　　　　that Shaputis CURRENTLY poses an unreasonable threat to others if
27   　　　　released on parole absent some evidence there is a CURRENT likelihood
　　　　Shaputis will be unable to maintain his sobriety on the parole. (In
28   　　　　re Smith, supra, 114 Cal.App.4th at p.372; Cf. Biggs v. Terhune, (9th

Cir. 2003) 334 F.3d 910, 916 [although reliance on conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law, where inmate over time continues to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of prior conduct would raise serious questions involving his liberty interest in parole]; accord, <u>Irons v. Warden of California State Prison</u> - Solano (E.D. Cal. 2005) 358 F.Supp.2d 936, 947 and fn.2).

Under the holdings of Smith (Second District), Scott I and II (First District), and Shaputis (Fourth District), the Board's boilerplate findings that every crime, regardless of the facts, shows an "Exceptionally callous disregard for human suffering" and/or was committed in a "dispassionate and/or calculated" manner cannot be sustained.

These labels, placed on virtually every crime by the Board, cannot be rubber stamped simply because any life crime is an offensive, antisocial act. The facts must be analyzed carefully before the above aggravated findings can be made.

Utilizing both Smith and Shaputis, the Board's reliance on an individual's former lifestyle, including drug and alcohol addiction, certainly may be argued to be arbitrary in cases where no evidence suggests a **CURRENT** inability to maintain sobriety. As the Shaputis court observed:

> [T]he BPT's conclusion Shaputis remained a danger to society, to the extent it was premised on a former lifestyle that all of the evidence showed was a historical relic, is so lacking in any medical, psychological or behavioral evidentiary support that it is arbitrary and capricious, within the differential standards articulated by Rosencrantz, 29 Cal.4th 616.

A prisoner's prior use of drugs is not appropriate consideration in determining parole suitability. See, <u>In re Smith</u>, 109 Cal.App.4th 489, 505.

The First, Second and Fourth District Courts of Appeal have now published cases chipping away at the foundation of the Board's policy of denying parole on the rote generalizations and boilerplate findings. Ironically, in spite of these courts decisions the Board seems just as resolute as ever to deny parole based on the crime, criminal priors, any type of ancient social history involving drugs or alcohol. The Board still refuses to recognize the Biggs principles

4

1  (familiar to readers as a due process denial when the crime and other unchanging

2  factors are repeatedly used, as a basis to deny parole in light of strong evidence

3  of rehabilitation).

4      This Honorable Court must at some point in time determine when the U.S.

5  Constitutions Fourteenth Amendment due process violations start. One would reason

6  that after the inmate's <u>initial</u> (1st) parole hearing, the crime and other

7  unchanging factors <u>could</u> <u>not</u> constitutionally be applied as an unsuitability

8  factor for parole. The court would have to reason that the due process violation

9  has become a violation of cruel and unusual punishment under the U.S.

10  Constitutions Eighth Amendment.

11      As several courts have held, that continued use of unchanging factors 'could'

12  result in a due process violation, Petitioner submits that if there is a 'cut

13  off point' where the due process violation would 'finally' occur it would be

14  then reasonable to assume that the due process violation does occur after the

15  first (1st) usage of the unchanging factors.

16      Additionally, the Board continues to deny those who fail to express adequate

17  "insight" into the causative factors of the crime or who fail to express adequate

18  remorse. This presents another legal issue for the courts to resolve: Under Penal

19  Code Section §5011, the Board shall not require an admission of guilt to any

20  crime as a condition of setting a parole date; additionally, under Title 15,

21  Section §2236, the Board shall not require an admission of guilt, and the prisoner

22  may refuse to <u>DISCUSS</u> the facts of the crime. But until the Board hears adequate

23  (their level) insight and remorse articulated by the prisoner, parole will

24  continue to be denied. The legislature created a "right" under §5011 and the

25  Board refuses to acknowledge that right (to not discuss the case, crime or guilt).

26      Petitioner asserts that; The Board gave no reference to Petitioner's remorse,

27  or to the fact that Petitioner has taken full responsibility for what happened

28  that tragic evening.

To the contrary, the Board stated that Petitioner needs to come to terms with what happened that evening. The fact is, there is nothing to support the Board's conclusion on this matter.

Petitioner has expressed, to the Board, Clinical Psychologist and (CDC) Correctional Counselor, his sorrow and deep regret for his actions that caused so much pain and anguish on all persons involved in this tragedy.

THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BY MIS-APPLYING THE SUITABILITY CRITERIA AT A PAROLE SUITABILITY HEARING.

Petitioner will herein establish that the Board's conclusions are arbitrary and capricious at the least, and do not meet the some evidence principle in denying parole.

Petitioner's "Psychological Evaluation and Life Prisoner Evaluation" will more than establish how Petitioner has changed for the better and rehabilitated himself in the past 15 years.

Petitioner will herein list each of the arbitrary and capricious conclusions by the Board and then answer them with documentation prepared by, (1) a California Clinical Board Certified Psychologist, and, (2) a qualified (CDC) Correctional Counselor.

### The Board's Unsubstantiated Conslusions.

Parole Transcripts, Exhibit "A", at pp.46: Inmate Luther would pose an unreasonable risk to society or a threat to public safety.

Parole Transcripts, Exhibit "A", at p.48: Instability in inmate Luther's social history. (Note: If this were true, it was 15 years in the past).

Parole Transcripts, Exhibit "A", at p.48: Inmate Luther programmed in a limited manner. (Note: No where supported in the record).

Parole Transcripts, Exhibit "A", at p.48: Inmate Luther failed to upgrade his education. (Note: Excellent work ethic and marketable skills, and has a high

1  school diploma).

2      Parole Transcripts, Exhibit "A", at p.49: Inmate Luther needs to upgrade

3  parole plans. (Note: Parole plans are excellent).

4      Parole Transcripts, Exhibit "A", at p.50: Inmate Luther needs therapy. (Note:

5  no where supported in the record).

6      Parole Transcripts, Exhibit "A", at p.52: Inmate Luther needs support to

7  enter society. (Note: Petitioner has above average support from family and

8  employer).

9      The following statements and conclusions from Petitioner's Psychological

10  Evaluation and Life Prisoner Evaluation, will substantiate the facts of why

11  Petitioner should be given a parole date.

12      Psychological Evaluation, (Exhibit "B", at pp. 3-4):

13      ASSESSMENT OF DANGEROUSNESS

14      "In considering his potential for dangerous behavior in the institution,

15  inmate Luther remains entirely disciplinary - free. He has changed a great deal

16  in the last 15 years. He has grown in self-awareness, maturity, positive direction

17  in his life, and self-control. As a result, his potential for dangerous behavior

18  is definately below average in comparison to other inmates." (Emphasis added).

19      "In considering his potential for dangerous behavior if released to the

20  community, the level of Service Inventory-Revised, was administered. This is

21  an actual measure that assesses criminal background, substance abuse history,

22  academic and vocational achievement, family relationships and other factors.

23  His score places him at the 3.4 cumulative percentile in comparison to other

24  prison inmates. This means that if 100 inmates were released on parole, he would

25  do better than 96% of other parolees. In addition, his excellent institutional

26  adjustment, record of being an outstanding worker and his positive attitude,

27  would indicate that his potential for dangerous behavior in the community is

28  no greater than the average citizen. In fact, based upon his life changes, it

7

1 is <u>below</u> <u>average</u> in comparison to the <u>average</u> <u>citizen</u>." (Emphasis added).

2     "At this point in time, there are <u>no</u> <u>significant</u> <u>risk</u> <u>factors</u> in this case."

3 (Emphasis added).

### CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

5     "There is <u>no</u> evidence of mental or emotional problems in this case that

6 would interfere with granting parole. Inmate Luther <u>does</u> <u>have</u> <u>a</u> <u>strong</u> <u>family</u>

7 <u>support</u> <u>system</u> in the community. His thinking is markedly <u>prosocial</u>. There is

8 <u>no</u> <u>evidence</u> of any <u>antisocial</u> <u>thinking</u> <u>or</u> <u>values</u>. He also is a hard worker with

9 an <u>excellent</u> <u>work</u> <u>ethic</u>. He has viable skills that will enable him to support

10 himself in the community without any problems. He also <u>has</u> <u>current</u> <u>job</u> <u>offers</u>,

11 as well as a <u>residence</u> <u>available</u> <u>to</u> <u>him</u>. The prognosis for successful adjustment

12 in this case is <u>excellent</u>." (Emphasis added).

### Life Prisoner Evaluation, (Exhibit "C", at p.2):

14     "<u>Assessment</u>: I foresee <u>no</u> <u>problems</u> with Luther's ability to succeed on

15 parole. He has programmed <u>exceptionally</u> <u>well</u> and has excelled in his work

16 assignment. His prior record is <u>relatively</u> <u>minor</u> in nature and he has <u>no</u> juvenile

17 record. He will have <u>no</u> gang, drug or pattern of violence issues which will

18 inhibit his progress. His <u>parole</u> <u>plans</u> <u>appear</u> <u>solid</u> and he has an array of

19 marketable ability for employment. It is my belief that Luther harnesses a sincere

20 level of remorse for his life crime and will forever hold himself accountable

21 for the adverse affects it had on the victim's family and his own. His intention

22 was <u>not to take a life</u> that tragic day. He accepts responsibility and is focused

23 on reunification with his family and successful people." (Emphasis added).

24     Petitioner asserts that; The above reports were written by persons that

25 are experts in their fields, and they applied the same information as the Board

26 members. In fact, there is no proof on the record that the BPH members have the

27 same or equivalent professional credentials.

28                                    //

1

## PETITIONER'S SELF-HELP

2    **Parole Transcripts, Exhibit "A", at p.48:** The Board stated that inmate Luther

3    has not participated in self-help.

4    Petitioner asserts that; As stated in his Psychological Evaluation (Exhibit

5    "B", at p.2), he has been active in Alcoholics Anonymous, has strong Biblical

6    values and studies the principles of the Overcomer's Program. (See, Exhibit "D").

7    Petitioner wholeheartedly believes and stands by his belief in the word

8    of God (the Bible). Petitioner truly believes that when he began studying the

9    Bible 15 years ago it was a wake-up call "get your life in line with what you

10   believe", and he will always believe that it is his belief system that has

11   dramatically changed his life.

12   **Parole Transcripts, Exhibit "A", at p.34:** The Board referring to Petitioner's

13   Psychological Evaluation stated that Petitioner was in "Institutional Remission."

14   (Alcohol/drugs).

15   Petitioner asserts that; He has <u>chosen</u> <u>not</u> to drink alcohol or use illegal

16   narcotics. It is well established in the CDC prison system that alcohol and

17   narcotics are readily; if not abundantly, available, as Title 15 C.C.R.

18   regulations have a violation (§3016) on this matter.

19   THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S
     DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND
20   FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BY THE
     UNCONSTITUTIONAL APPLICATION OF PENAL CODE SECTION §3041(b).

21

22   Petitioner will herein establish that Penal Code §3041(b) is being

     mis-applied to Petitioner's sentence of 15 years "to life" for Second (2nd) degree
23
     murder, and therefore has created a further <u>liberty interest</u> and due process/equal
24
     protection violation.
25
     Petitioner asserts that; Penal Code §3041 was amended in 1977 by Senate
26
     Bill 42 (SB42), to be applied to "for life" prisoners and a minimum of seven
27
     (7) years to be served. Senate Bill 42 made <u>ALL</u> "to life" sentences determinate
28

9

1  terms (2nd degree murder of 5 years "to life" was repealed and made a determinate

2  sentence of 5, 6 or 7 years). Penal Code §3041(b), by Legislative intent when

3  enacted, was to ONLY be applied to First (1st) degree murder and Kidnapping,

4  and a minimum of seven (7) years to be served, as these were the ONLY life

5  sentences at the time P.C. §3041(b) was enacted.

6       Therefore, Penal Code §3041(b) was NEVER enacted to be applied, and CANNOT

7  be made applicable to Petitioner's sentence of Second (2nd) degree murder of

8  15 years "to life", because the California Legislature, under Senate Bill 42

9  of 1977, established Second (2nd) degree murder as a lesser degree of crime by

10 making this sentence a determinate term of straight 5, 6 or 7 years. Furthermore,

11 Petitioner's sentence of 15 years "to life" for Second degree murder had not

12 been thought of when P.C. §3041(b) was enacted in 1977, as Petitioner's sentence

13 was enacted in 1978 under Proposition 7.

14      The only forseeable condition where Penal Code §3041(b) could be applied

15 to Second degree murder of 15 years "to life" is the inmate's conduct while in

16 prison, of which, may imply a threat to society.

17      The California Voters Ballot Pamphlet for the initiative measure Proposition

18 7 (See, Exhibit "E"), clearly states that the ONLY change to Second degree murder

19 was the increase from 5, 6 or 7 years to 15 years "to life". Proposition 7 ONLY

20 changed the number of years to be served, i.e., an increase in punishment. There

21 is NO implied difference between the malice as to 5, 6 or 7 years for Second

22 (2nd) degree murder and 15 years "to life". See, In re Jeanice D., (1980) 28

23 Cal.3d at p.220, for a description of 15 years "to life".

                    BRIEF HISTORICAL BACKGROUND OF P.C. §3041(b)

25      The key to understanding the who, how, and the "exception" to setting a

26 parole date is by tracing the statute back to when it was enacted ... Senate

27 Bill 42 (SB42) of 1977, and what life prisoners the Board was required to hold

28 hearings for under the enacted penal code.

1    The Uniform Determinate Sentencing Act (DSL) became law in July, 1977 and
2    P.C. §3041(a)(b) were enacted at the same time and required the Board to
3    "normally" set a parole date, P.C. §3041(a), with P.C. §3041(b) providing a narrow
4    exception to setting a parole release date for "particularly egregious offenses."

5    The class of life prisoners the Board was required to see after the enactment
6    of the DSL on July 1, 1977, were First (1st) degree murders and Kidnappers, of
7    whom both these sentences had to serve seven (7) years before becoming eligible
8    for parole. Penal Code Sections §3041(a)(b) were enacted 16 months before the
9    Initiative Measure Proposition 7, which increased the murder penalty of First
10   (1st) degree murder from "life" to "25 years to life" and changed Second (2nd)
11   degree murder from a "determinate" term of 5, 6 or 7 years to an "indeterminate"
12   sentence of "15 years to life".

13   Before Proposition 7 was enacted in November, 1978, the Board was required
14   to see two (2) classes of life offenses of First (1st) degree murder and
15   Kidnappers. Penal Code §3041(a) required the Board to "NORMALLY" set parole
16   release dates for those two (2) classes of life sentences. The "EXCEPTION" to
17   setting a parole release date is when §3041(b) is applied, offenses that were
18   such in gravity, so especially grave and so particularly egregious that public
19   safety concerns required a longer period of incarceration for these individuals
20   and a parole date could not be set.

21   In People v. Anderson, 6 Cal.3d 628 (1972), the California Supreme Court
22   held that the "then" California death penalty law was impermissibly cruel, and
23   128 inmates whose sentences were fixed at death now would have their sentences
24   reduced to "life" with the possibility of parole. (Note: There was no life without
25   the possibility of parole in California at that time). See, e.g., In re Stanworth,
26   (1982) 33 Cal.3d 176. In 1966 Stanworth was sentenced to death following a plea
27   of guilty to two (2) counts of First (1st) degree murder. Stanworth was one of
28   the prisoners who came off of death row and was given a term of life with the

1   possibility of parole. In 1979 Stanworth was given a parole date after 13 years
2   and served a total of 17 years at the time of his release on parole. See also,
3   McQuillion v. Duncan, (Ninth Circuit Court of Appeals, No. 03-55702, D.C. No.
4   CV-98-03680-DT, September 28, 2003).

5       When the DSL was enacted July 1, 1977, this group/class of 128 inmates,
6   that came off of death row, after serving 7 years were eligible for parole, the
7   circumstances of their offense(s) were of such gravity "particularly egregious"
8   in nature that public safety concerns allowed the Board to deny setting a parole
9   release date under §3041(b).

10      The offense(s) of these inmates that came off of death row were not
11  comparable to "normal" (1st) degree murder or kidnapping offenses, under the
12  provisions of the Uniform Proportionate Punishment for base terms in the Boards
13  matrix guidelines for similar offenses. All of the 128 inmates convictions had
14  "special circumstances".

15      Penal Code §3041(a) requires the Board to establish criteria not only for
16  the setting of a parole release date, but also criteria for the "EXCEPTION" to
17  setting a parole date under §3041(b) and §3041.5(b)(2). This criteria to the
18  exception is implemented in the Board's 1978 amended regulations, Title 15 C.C.R.
19  §2281 (c)(1)(A)(B)(C)(D), et seq..

20      The first amendment of subsection (c) filed 6/28/79, (Register 79, No. 26):
21  "Circumstances tending to show unsuitability", "the prisoner committed the offense
22  in an especially heinous, atrocious or cruel manner."

23      The language and circumstances were adopted from Proposition 7's section
24  §190.2(a)(14). Please take special notice: Penal Code §190.2 ONLY applies to
25  inmates with a sentence of "life without the possibility of parole" or "the death
26  penalty", NOT (1st) or (2nd) degree murder with the possibility of parole.
27  Compare: Title 15 C.C.R. §2281 and §2402.

28      The circumstances tending to show unsuitability ... are the EXCEPTIONS to

1  setting a parole release date, which, prior to the sentences of 15/25 years to

2  life of Proposition 7 (1978) had a VERY NARROW application. The "EXCEPTION"

3  was not normally applied but was meant to be applied to the 128 inmates that

4  came off of death row.

5      The Board is violating the due process clause by unconstitutionally applying

6  the exception, §3041(b), to ALL "to life" prisoners of 1978 Proposition 7. By

7  applying P.C. §3041(b) to ALL "to life" inmates, thus making the EXCEPTION the

8  NORM, the Board has effectively destroyed the proportionality contemplated by

9  P.C. §3041(a).

10      By Legislative intent, Penal Code §3041(b) CANNOT be applied to ALL (1st)

11 or (2nd) degree murder sentences (15/25 years to life), "UNLESS" the exception

12 is proven.

13      In summary, the enactment of P.C. §3041(a) of 1977, provided that parole

14 dates shall normally be set for First (1st) and Second (2nd) degree murder

15 sentences, with subsection (b) serving as the NARROW EXCEPTION and ONLY being

16 applied to offenses that are not of the "normal" first degree murder... The 128

17 inmates that came off of death row had special circumstances that the exception

18 was intended to be applied to. See, In re Leslie Van Houten, 116 Cal.App.4th

19 339 (2004).

20      In People v. Thompson, 29 Cal.Rptr.2d 847 (Cal.App.2 Dist. 1994), a case

21 involving a fire bombing of a residence after midnight and a 2 year old child

22 was killed, the court held that:

23      "Given this deference to the legislature, defendant is wise not to
        challenge the sentence imposed by the Legislature for those who are

24      convicted under Section 12310. That branch has determined this crime
        is particularly dangerous to human life and those who are convicted

25      of causing death by igniting a destructive device should be sure to
        suffer a penalty separate and apart from the murder statutes. The

26      penalty challenged herein is calculated to advance a critically
        important social policy for the protection of the public at large,

27      i.e., the deterrence of a PARTICULARLY EGREGIOUS type of
        life-endangering criminal conduct." See also, People v. Isitt, (1976)

28      55 Cal.App.3d 23, 31, 127 Cal.Rptr. 279; People v. Laursen, (1972)

1          8 Cal.3d 192, 198, 104 Cal.Rptr. 425, 501 P.2d 1145.

2          At pp.851-852: "As noted above, the legislative determination has made
           that the crime involved in this case is a _more_ _serious_ _crime_ _than_
3          _premeditated_ _murder_ and deserves the augmented penalty associated with
           it. The use of destructive devices, Molotov cocktails in this instance,
4          which can inflict indiscriminate and multiple deaths, marks defendant
           as a greater danger to society than a person who premeditates the murder
5          of a single individual." (Emphasis added throughout).

6          It is apparent that the Court followed the legislative intent for cases

7     that were particularly egregious in sentencing Thompson. As asserted by Petitioner

8     above, P.C. §3041(b) was enacted by the Legislature for such purposes, the

9     EXCEPTION to, separate and apart from the murder statutes. Thompson, [3] at 850.

10         As is established under the facts presented above, Petitioner's commitment

11    offense simply cannot be so particularly egregious as to justify the denial of

12    parole pursuant to Penal Code §3041(a)(b).

13         A crime is "particularly egregious" when elements of "special circumstances"

14    were found that would authorize a sentence of life without the possibility of

15    parole or the death penalty. In re Leslie Van Houten, supra. In Van Houten, the

16    jury found special circumstances to be true at the original trial.

17         There were NO special circumstances found to be true at Petitioner's trial,

18    therefore, the Board CANNOT apply subdivision (b) of P.C. §3041 to his suitability

19    hearing. Additionally, several courts have used the language of "ax murder",

20    "execution style murder" when compared to "normal", "ordinary run", "common

21    scenario", "conventional" when addressing particularly egregious murder cases.

22    (Citations omitted).

23                              GRAVITY OF THE OFFENSE

24         See Exhibit "A", at p.13: Petitioner was convicted of killing a man that

25    entered Petitioner's home, uninvited. Petitioner told the victim to get out of

26    his home and at that point a fight ensued. Petitioner grabbed his gun from under

27    the bedroom bed and struck the victim on the side of his head and the gun

28    discharged killing the victim. Petitioner then called 911.

                                          14

THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION WHEN THEY FAILED TO CONSIDER SETTING A PAROLE DATE UNDER PENAL CODE §3041(a).

Petitioner contends that; At no time during the parole hearing, nor at any time during Petitioner's incarceration has the Board considered the determinate term that Petitioner would serve, as calculated by the Matrix, Title 15 C.C.R. §2404, or the time he has actually served as factors in the suitability equation under subdivision (a) of P.C. §3041. (See, Exhibit "F").

The Court of Appeals in, In re Ramirez, (2001), 94 Cal.App.4th 549, at p.569 held that:

"The Board cannot ignore the determinate term prescribed for a commitment offense when it considers the gravity of the crime as a factor weighing against a finding of suitability for parole. The Board must make its determination 'in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public.' (P.C. §3041(a)). Determining what would be a 'uniform' term for an inmate serving a determinate life term for offenses that include concurrent determinate terms is not an exact science. However, the Board should strive to achieve at least a rough balance between the gravity of the offense, the time the inmate has served, and the sentences prescribed by law for the commitment offense."

At page 570, the Court held that:

"The Board must also consider the length of time the inmate has served in relation to the terms prescribed by the Legislature for the offenses under consideration, in order to arrive at a "uniform" term as contemplated by P.C. §3041(a)."

The gravity of Petitioner's conviction must be measured not in terms of the life maximum potential, but in relation to the determinate terms prescribed for such offenses in Title 15 C.C.R. §2403(b). The Board must consider the appropriate determinate term that would be set and the time he has already served.

The Board failed to follow the criteria of 15 C.C.R. §2403(b). (Note: Although Petitioner hereinafter asserts that, 15 C.C.R. §§2400-2411 cannot be applied to him, the Board is still in violation of not complying with their own rules and regulations).

In, In re Jeanice D., (1980), 28 Cal.3d 210, at p.220, the California Supreme

1    Court, in reference to the initiative measure Proposition 7, stated: "The

2    initiative, of course, was not drafted as part of the general DSL, but on the

3    contrary, explicitly replaced the determinate sentence of 5, 6 or 7 years

4    established by the DSL for Second (2nd) degree murder with an Indeterminate 15

5    years to life sentence."

6        The Court noted that the DSL repealed the criteria, provisions and mandates

7    of the ISL to govern indeterminate sentences. This same Supreme Court gave

8    guidance at "footnote 7", of which the Board still fails to take notice of. (I.e.,

9    P.C. §3000).

10       Proposition 7's sentences of 15/25 years to life under P.C. §190, does not

11   expressly prescribe 15/25 years to life to be life imprisonment. See, P.C. §669;

12   People v. Collins, 99 Cal.App.2d 780, 781, 222 P.2d 686, citing, People v. Rivas,

13   85 Cal.App.2d 540, 193 P.2d 151. "When the term of imprisonment for first/second

14   degree murder is pronounced it is 'indeterminate' 'until fixed' by the BPT so

15   authorized."

16       While P.C. §§1170 et seq., apply to determinate sentences, the current

17   provisions of P.C. §3041 governing parole for inmates serving indeterminate terms

18   were added as part of the Senate Bill enacting the Determinate Sentencing Law,

19   and were intended to serve the same purpose as the determinate sentencing

20   provisions. See, (Stats., 1976 Chapter 1139, Section 281, at P.5151; In re

21   Stanworth, (1982), 33 Cal.3d 176, 182. Our Supreme Court in California has made

22   it clear that the uniform term called for by P.C. §3041(a) are analytically

23   equivalent to determinate sentences imposed under P.C. §§1170 et seq.. See, People

24   v. Jefferson, 21 Cal.4th 86, 95-96.

25       In Mcquillion v. Duncan, No. 03-55702, D.C. No. CV-98-03680-DT, filed

26   September 28, 2003. The U.S. Ninth Circuit Court of Appeals addressed the issue

27   of setting a future parole date (at p.13022). McQuillion was convicted of two

28   (2) counts of murder in 1973 (at P.13018). At McQuillion's first (initial) parole

1  hearing in 1979 the Board set a parole date for October 7, 1998. At six (6)
2  subsequent Board hearings McQuillion's parole date was reduced to May, 1994.
3  McQuillion served a total of 21 years for two (2) counts of first (1st) degree
4  murder.

5  McQuillion had a prior criminal history, and, ambiguous psychiatric reports.
6  (At p.13019).

7  At p.13022, the Warden argued, without pointing to any evidence in the
8  record, that McQuillion has "continuously been found a danger to society." The
9  Court referred to this claim as "irresponsible hyperbole". The Court further
10  concluded/held that "the Board in 1979 found McQuillion suitable for parole and
11  set a fixed future parole date of 1998." (Emphasis added). McQuillion's future
12  parole date was set at his initial parole hearing.

13  Petitioner's case is one (1) count of second (2nd) degree murder, and, no
14  previous criminal history to speak of, positive reports from a state certified
15  Psychologist and CDC Correctional Counselor.

16  Petitioner asserts that; The same criteria, provisions and mandates that
17  were applied to McQuillion are being applied to him, but with a totally opposite
18  outcome to Petitioner.

19  The equal protection clause forbids the state to treat one group, including
20  group of prison inmates arbitrarily worse than another. See, Anderson v. Romero,
21  72 F.3d 518 (7th Cir. 1995); The equal protection analysis is substantially
22  identical under the U.S. Constitutions—Fifth and Fourteenth Amendments. See,
23  Fraternal Order of Police v. U.S., 152 F.3d 998 (D.C. Cir. 1998); The equal
24  protection clause extends to prison inmates. See, Rouse v. Benson, 193 F.3d 936
25  (8th Cir. 1999); The equal protection clause is essentially a direction that
26  all persons similarly situated should be treated alike. See, Brown v. City of
27  Oneonta, NY, 195 F.3d 111 (2nd Cir. 1999); A person does not have to be a member
28  of a protected group to invoke the equal protection clause. See, Hilton v. City

17

1  of Wheeling, 209 F.3d 1005 (7th Cir. 2000).

2      Petitioner asserts that; The Board violated his constitutional rights under

3  the equal protection clauses by not setting a future parole date as was done

4  in McQuillion, supra, under the uniform term (gravity of the offense) standard.

5  (See, Exhibit "F", C.C.R. §2404).

6      Petitioner will have served 17 years, less good time credits, when his next

7  parole hearing is held in January, 2008. If good time credits, of one third,

8  are applied as they should be, Petitioner's time served will amount to 23 years

9  on a 18 years to life sentence. (Note: Sentence of 15 years to life plus 3 years

10  for gun allegation).

11      Petitioner asserts that; There is no comparison between McQuillion and

12  Petitioner to justify the non uniform term contemplated by the Legislature when

13  they enacted subsection (b) of P.C. §3041.

14      THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S DUE
    PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF
15  THE U.S. CONSTITUTION BY APPLYING TITLE 15 C.C.R. §§2400-2411
    TO OVER-RIDE AND CONTROL PENAL CODE §3041(a)(b).

16

17      Title 15 C.C.R. §§2400-2411 are in direct violation of the California

18  Constitution Article II, §10(c) (Referendum Process). The initiative measure

19  Proposition 7, which enacted the sentences of 15/25 years to life under P.C.

20  §190 DID NOT PERMIT any additions, amendments, repealing or "Superceeding" to

21  be inclusive to Proposition 7 without voter approval.

22      Government Code Section 11340(a): "The administrative regulations are
    authorized by statute, and consistent with other statutes of law,
23  section (f) requires the direct involvement of the Legislature and
    the Executive Branch."

24      Government Code Section 11340.1(a): "The Legislature declares that
    public interest established the Office of Administrative Law (OAL)
25  which shall be charged with review of adopted regulations, which
    substitutes performance standards (e.g., the fulfillment or
26  accomplishment in a given case, the substantial performance for
    'prescriptive' (based on legal prescription or as approved by law)
27  standards. The intent that neither the OAL nor court shall substitute
    its judgment for rule-making agency in the substantive content of
28  adopted regulations. With the intent of the Legislature the OAL is

18

a part of the Executive Branch of the state government, and reports directly to the Legislature."

Government Code Section 11342.2: "The adoption of regulations is to implement, interpret and make specific to carry out the provisions of the statute..."but"...no regulation adopted is valid or effective unless consistent and <u>not in conflict with statutes or constitution to effectuate the purpose</u>, of the regulations." (Emphasis added).

Petitioner asserts that; The Department of Corrections (CDC) Regulations Management Department writes the regulations. The OAL as to Government Code §11342.2 implements, interprets and makes specific the provisions for the regulations statute. The Legislative Body chapters, presents to the Governor and is filed with the Secretary of State as a statute of law for 15 C.C.R. regulations.

Petitioner asserts that; The Initiative Measure Proposition 7, <u>did not</u> provide for any continuation (Government Code §9604) of rules and regulations of the Administrative Procedure Act (APA) of 1976, nor the OAL enacted in 1979, which gives the CDC and the BPH explicit authority for administration of prisoners, P.C. §§5058, 5076.2 under Government Code §11340, enabling statute.

Petitioner has established that the Board of Prison Hearings (BPH) regulations are approved by the OAL under the Legislatures Constitutional grant of power, California Constitution Article VI, §6 and P.C. §6.

The BPH added <u>NEW</u> Title; 15 C.C.R. §§2400-2411 regulations, filed September 8, 1981; Register 81 No. 37. These <u>NEW</u> regulations are parole consideration criteria and guidelines, creating <u>NEW</u> procedural provisions and mandates, of which <u>CANNOT</u> be constitutionally applied to Proposition 7's Initiative Measure without voter approval...Sentences of 15/25 years to life.

"The California Supreme Court has held that the enactment of Penal Code §2933 <u>COULD NOT</u> be inclusive to Proposition 7 Briggs initiative without voters approval and was in violation of California Constitution Article II, §10(c)". See, <u>People v. Cooper</u>, (2000), 101 Cal.Rptr.2d 1. (Emphasis added).

"A statute enacted by the electorate as an initiative measure may be changed ONLY with the approval of the electorate unless the initiative measure itself permits amendment or repeal without voters approval. Proposition 7 DID NOT ALLOW such amendment or repeal without voters approval." See, In re Oluwa, (1989), 207 Cal.App.3d 447. (Emphasis added).

Petitioner brings to this Honorable Court's attention, Government Code §11342.2, (supra); "No regulation adopted is valid or effective unless consistent and not in conflict with statute or constitution to effectuate the purpose." (Emphasis added).

Petitioner asserts that; Title 15, Division II, C.C.R. §§2400-2411 which are guidelines used by the Board against inmates sentenced under Proposition 7's P.C. §190 (15/25 years to life), are in direct violation of California Constitution Article II, §10(g) Referendum Process.

Penal Code §3041 CANNOT be controlled by Division II, 15 C.C.R. criteria, especially unconstitutionally enacted criteria, and this is exactly what is being done by the Board. Thus, over-riding a clearly stated penal code. The only true and legally correct criteria for a parole date is that the inmate does not pose an unreasonable risk to society, (P.C. §3041(a)(b)); and this issue has already been decided in Petitioner's psychiatric report and Board report, by a state certified/licensed (expert) pyschologist/psychiatrist and a qualified Correctional (CDC) Counselor.

Petitioner has no criminal history, no CDC-115 rules violations, he studies the Bible regularly, participates in self-help, he has above average parole plans and a residence to parole to, all the above is a requirement of P.C. §3041 for receiving a parole release date.

Furthermore, a regulation, (Title 15 C.C.R. §§2400-2411), CANNOT over-ride (control) a clearly stated statutory enactment. (California P.C. §§3041 et seq.). See, Aerolineas Argentinas v. U.S., 77 F.3d 1564 (Fed. Cir. 1996).

The Board CANNOT apply or use Title 15 C.C.R. §§2400-2411 to over-ride (control) the legislative intent of P.C. §3041(b). Penal Code §3041(b) is not ambiguous but rather it is plain and clear in its meaning and who/when it applies and is a factual representation of legislative intent; That an inmate "SHALL" receive a parole date at his first (initial) hearing, except for certain exceptions, basically stated: that he is not a threat to society and his crime was not particularly egregious.

Petitioner has established that; The Board did violate his Due Process and Equal Protection rights under the U.S. Constitutions Fifth and Fourteenth Amendments, by applying unconstitutionally enacted criteria of Title 15 C.C.R. §§2400-2411.

Petitioner has met the criteria to receive a parole date, therefore the Board's decision is without "some evidence" to support its conclusions for denial and it then becomes an excuse to deny parole based on the arbitrary and capricious standard.

An agency may not confer power on itself. See, Gorbach v. Reno, 219 F.3d 1087 (8th Cir. 2000).

When an administrative regulation conflicts with a statute, the statute controls. See, Government Code §11342.2.

Regulations that contravenes a statute is/are invalid. See, R & W Flammann GMBH v. U.S., 339 F.3d 1320 (Fed. Cir. 2003).

A statute, by its very nature, trumps conflicting regulations. See, Caldera v. J.S. Alberici Const. Co. Inc., 153 F.3d 1381 (Fed. Cir. 1998).

An agencies regulations cannot ligitimate, or make legal, the violations of constitutional or statutory rights. See, U.S. v. Marolf, 173 F.3d 1213 (9th Cir. 1999).

By the very nature of the language of P.C. §3041(a)(b) and the absence of provisions and mandates to control hearings for 15/25 years "to life" sentences

the Board illegally, unconstitutionally and in violation of Federal and State Due Process rights attempts to control and over-ride Penal Code §3041(a)(b) through the application of Title 15 C.C.R. §§2400-2411 criteria of which NONE are legal requirements under P.C. §3041 for consideration of suitability for parole release.

The Board has effectively amended Penal Code §3041(a)(b) and the legislative intent has been circumvented. The Board has unreasonably applied U.S. Supreme Court law, when using unconstitutionally enacted rules and regulations to over-ride the language in Greenholtz and Allen; SHALL be released on parole. The Board's decisions/conclusions are clearly contrary to established U.S. Supreme Court law, and the California Constitution's Referendum Process, thus contrary to the holdings in Greenholtz and Allen's language of due process rights to a fair, impartial and meaningful hearing.

### CONCLUSION

There is no articulable evidence to support the Board's conclusion that Petitioner still poses an unreasonable (current) risk to society if paroled. The Board appears to have recited rote language without regard to the facts and evidence before it and with disregard for Petitioner's right to individualized consideration and due process.

This was Petitioner's second (2nd) parole hearing, he is four (4) years past his MEPD, and at this point continued denial of parole has become a due process violation. See, Biggs v. Terhune, supra, 334 F.3d at p.916.

The Board's finding that Petitioner demonstrated a callous disregard for human suffering was "blind to the record", (In re Scott, supra, 119 Cal.App.4th at p.892), which shows no evidence of suffering above that inherent in any death. The Board's assertion that the motive was "trivial" is directly refuted by the Board's matrix which identifies the circumstances of this crime as being unexceptional and commonplace. The Board's finding regarding "threat to society"

is completely unsupported given Petitioner's fifteen (15) years of performance as a model prisoner.

Petitioner has been diligently devoted to self-help improvement while incarcerated, has marketable skills and has realistic parole plans. The record provides no reasonable grounds to reject, or even challenge, the findings and conclusions of the psychologist and counselor concerning Petitioner's dangerousness. (In re Smith, supra, 114 Cal.App.4th at pp. 343, 369).

There is nothing in the record that the Board made any effort to compare Petitioner's crime to others. Since parole is the rule and not the exception, (Smith, supra, 114 Cal.App.4th at p.351), the Board is constitutionally required to "weigh the inmate's criminal conduct not against ordinary social norms, but against other instances of the same crime or crimes." (In re Ramirez, supra, 94 Cal.App.4th at p.570). The Board's "predetermined conclusion in search of justification", (In re Caswell, (2001), 92 Cal.App.4th 1017, 1030), is amply demonstrated by its findings that the crime was trivial. "It could not be both." (Scott, supra, 119 Cal.App.4th at p.892). This appears, by the Board, to be no more than a reading of form language without reference to Petitioner's case, apparently to provide "a post hoc rationalization for a decision already made". (In re Rosenkrantz, (2000), 80 Cal.App.4th at p.427). In fact, the totality of the record, not just Petitioner's years of positive programming and model behavior, demonstrates that Petitioner has done nearly everything possible under the circumstances, and everything society can expect, to justify a chance on parole and to demonstrate his rehabilitation.

The Board has continued to violate Petitioner's due process and equal protection rights by incorrectly/unconstitutionally applying Penal Code §3041(b) to Petitioner.

The unsuitability factors do not out weigh the suitability factors. In fact, the record establishes that there are NO unsuitability factors supported by the

23

record.

To quote Thomas Jefferson: Do not trust man or government, but chain them to the constitution.

Respectfully submitted,

*Gary B. Luther*

Gary B. Luther


DECLARATION

I, Gary B. Luther, declare under penalty of perjury that the foregoing is true and correct, executed this _16_ day of May, 2006, at Soledad State Prison, County of Monterey, California.

*Gary B. Luther*

Gary B. Luther

24

## PRAYER

Wherefore, Petitioner respectfully requests that this Honorable court declare/order that;

1). Penal Code §3041(a)(b) does create a protectable liberty interest at a parole suitability hearing for an expectant release date:

2). Respondents show cause why Petitioner is not entitled to the relief requested:

3). The BPH set a release date consistent with Petitioner's MEPD as is established in P.C. §3041(a):

4). The language in P.C. §3041(a) is the only true and constitutionally legal requirement for a parole release date consideration:

5). Penal Code §3041(b) is being unconstitutionally applied to Petitioner's Second (2nd) degree sentence of 15 years to life:

6). Title 15 C.C.R. §§2400-2411 are in direct violation of California Constitution Article II, §10(c) Referendum Process, as the Initiative Measure Proposition 7 did not permit/authorize, to P.C. §190, any additions, amendments, repealing, or "superceeding" to be inclusive to Proposition 7 without voter approval:

7). Petitioner was eligible and met the legal criteria/requirements for a parole release date at his first and second parole suitability hearing:

8). Petitioner's conviction must be proven to be "particularly egregious" under the standard of "special circumstances" before the BPH can apply subdivision (b) of P.C. §3041, as is established by legislative intent:

9). The BPH's conclusions are arbitrary and capricious against Petitioner:

10). If the BPH does not set a parole release date for Petitioner, that this Honorable Court, under the U.S. Supreme Court's Constitutional grant of power, issue an order for Petitioner's release on parole forthwith.