# EXHIBIT H

S149990

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

In re GARY B. LUTHER on Habeas Corpus

The petition for writ of habeas corpus is denied.

SUPREME COURT

FILED

JUL 1 8 2007

Frederick K. Ohlrich Clerk

_____

Deputy

GEORGE
_____
Chief Justice

A6

Name  GARY B. LUTHER

Address  Box 689  F-330U

California State Prison

Soledad, CA 93960-0689

CDC or ID Number  E-98605

SUPREME COURT
**FILED**

FEB - 2 2007

Frederick K. Ohlrich Clerk

SUPREME COURT OF CALIFORNIA
Deputy

RECEIVED

FEB 2 - 2007

CLERK SUPREME COURT

_____
*(Court)*

GARY B. LUTHER
Petitioner

vs.

CURRY, Warden (Acting)
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. **S149990**

*(To be supplied by the Clerk of the Court)*

EVIDENTIARY HEARING REQUESTED

## INSTRUCTIONS — READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

☐ A conviction                    ☒ Parole

☐ A sentence                     ☐ Credits

☐ Jail or prison conditions      ☐ Prison discipline

☒ Other (specify): __Parole Board suitability denial.__

1. Your name: _____ Gary B. Luther _____

2. Where are you incarcerated? __California State Prison (CTF-Central), Soledad, CA__

3. Why are you in custody?  ☒ Criminal Conviction   ☐ Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      __Second degree murder with use of firearm__

   b. Penal or other code sections: __P.C. §§187 & 12022.5(A).__

   c. Name and location of sentencing or committing court: __Superior Court of Kern County, 1415 Truxtun Ave., Bakersfield, CA 93301-5216__

   d. Case number: __SC044653A__

   e. Date convicted or committed: __April 22, 1991__

   f. Date sentenced: __May 30, 1991__

   g. Length of sentence: __15 years to life, plus 3 years.__

   h. When do you expect to be released? __Unknown__

   i. Were you represented by counsel in the trial court?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address:

      __Not available at this time.__

4. What was the LAST plea you entered? *(check one)*

   ☒ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   ☒ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

6.  GROUNDS FOR RELIEF
    Ground 1:  State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement."  *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four.  For additional grounds, make copies of page four and number the additional grounds in order.)*

<u>                          See attached petition                          </u>

_____

_____

_____

a.  Supporting facts:
    Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

<u>                          See attached petition                          </u>

_____

_____

_____

_____

_____

_____

_____

_____

_____

b.  Supporting cases, rules, or other authority (optional):
    *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

<u>                          See attached petition                          </u>

_____

_____

_____

7. Ground 2 or Ground _____ *(if applicable):*

See attached petition

_____

_____

_____

_____

a. Supporting facts:

See attached petition

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority:

See attached petition

_____

_____

_____

_____

_____

8. Did you appeal from the conviction, sentence, or commitment?  ☒ Yes.  ☐ No.   If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
      Unavailable at this time

   b. Result: Denied _____   c. Date of decision: Unavailable

   d. Case number or citation of opinion, if known:   Unavailable

   e. Issues raised: (1) Unavailable (Documents lost over period of years)

      (2) _____ // _____

      (3) _____ // _____

   f. Were you represented by counsel on appeal?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:
      Unavailable

9. Did you seek review in the California Supreme Court?  ☒ Yes.  ☐ No.   If yes, give the following information:

   a. Result: Relied denied _____   b. Date of decision: Unavailable

   c. Case number or citation of opinion, if known:   Unavailable

   d. Issues raised: (1) _____ // _____

      (2) _____ // _____

      (3) _____ // _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal,
    explain why the claim was not made on appeal:
    Does not apply to this petition/cause of action.

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust
      administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975)
      52 Cal.App.3d 500 [125 Cal.Rptr. 266].) Explain what administrative review you sought or explain why you did not seek such
      review:
      *Does not apply to this petition.*

   b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.        Does not apply
      *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  [XX] Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1) Name of court: _____ Superior Court of Kern County _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): Habeas Corpus Petition

    (3) Issues raised: (a) _____ Same as attached herein _____

    (b) _____ // _____

    (4) Result (Attach order or explain why unavailable): Denied; Documents attached hereto

    (5) Date of decision: _____ August 10, 2006 _____

  b. (1) Name of court: California Court of Appeals, Fifth Appellate District.

    (2) Nature of proceeding: _____ Habeas Corpus Petition _____

    (3) Issues raised: (a) _____ Same as attached herein _____

    (b) _____ // _____

    (4) Result (Attach order or explain why unavailable): Denied,; Documents attached hereto

    (5) Date of decision: _____ January 10, 2007 _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
None held

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
Does not apply

16. Are you presently represented by counsel?  [ ] Yes.  [XX] No.  If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  [ ] Yes.  [XX] No.  If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
Petitioner reasonably believes that this Court has proper jurisdiction over this habeas corpus petition.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: January 31, 2007

                    Gary B. Luther
                    (SIGNATURE OF PETITIONER)

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

## Fifth Appellate District

COURT OF APPEAL
FIFTH APPELLATE DISTRICT
**FILED**

JAN 1 0 2007

LEISA V. BIGGERS, CLERK/ADMINISTRATOR
By_____
Deputy

|  |  |
|---|---|
| In re<br><br>GARY B. LUTHER,<br><br>　　　On Habeas Corpus. | F051250 |

BY THE COURT*:

The "Petition For Writ Of Habeas Corpus," filed in this court on September 22, 2006, is denied. A modicum of evidence supports the board's decision to deny parole. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 677.)

_____ P.J.

*Before Ardaiz, P.J., Gomes, J., and Kane, J.

IN THE

## Court of Appeal of the State of California

IN AND FOR THE

## Fifth Appellate District

COURT OF APPEAL
FIFTH APPELLATE DISTRICT
F I L E D

OCT 2 0 2006

LEISA V. BIGGERS, CLERK/ADMINISTRATOR
By_____
Deputy

|  |  |
|---|---|
| In re | F051250 |
| GARY B. LUTHER, | |
| On Habeas Corpus. | |

BY THE COURT*:

The Attorney General is directed to file in this court within 15 days of the date of this order a response to the "Petition For Writ Of Habeas Corpus" in the above entitled action. The response should address, but should not be limited to, the following questions:

1.    What facts support the board's finding that petitioner's offense was carried out in an especially cruel manner which demonstrated an exceptionally callous disregard for human suffering?

2.    What facts support a finding that the motive for the crime was petitioner's concern that he owed the victim $200?

Petitioner is granted 15 days from the filing of the response to submit a reply.

_____ P.J.

*Before: Ardaiz, P.J., Gomes, J., and Kane, J.

```
J2411H1         SUPERIOR COURT, METROPOLITAN JUSTICE BUILDING      08/10/06
KERN CJIS                 IN AND FOR THE COUNTY OF KERN               13:40
ORGANIZATION: WM

  CASE NO. HC009343 A      DATE: 08/10/06      TIME: 08:00 AM      DEPT.: RL

  IN THE MATTER OF LUTHER, GARY BRIAN

  JUDGE:   JOHN I KELLY, JUDGE         CLERK:   JENIFER GARDNER
  REPORTER:                           BAILIFF:
  NATURE OF PROCEEDINGS:
      HABEAS CORPUS.
      RULING
```

---

CDC ID NUMBER: E-98605.

PETITION FOR WRIT OF HABEAS CORPUS IS DENIED.

SEE RULING ATTACHED HERETO AND MADE A PART HEREOF.

COPY OF MINUTE ORDER SENT TO PETITIONER THIS DATE.

ENTERED ON CJIS BY JENIFER GARDNER - SCMET. ON
      08/10/2006.

---

                          MINUTE ORDER                    PAGE    1

In re Gary Luther
KCSC #HC93-43

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The court has reviewed the petition for writ of habeas corpus which was filed on May 25, 2006. On July 10, 2006, the court, on its own motion, extended time to rule on the petition until August 24, 2006.

The background of this petition is as follows:

a. Petitioner is currently incarcerated at California State Prison in Soledad, California.

b. A jury convicted Petitioner of second degree murder. The jury also found that Petitioner used a gun within the meaning of section 12022.5(a). Petitioner appealed, and the appellate court affirmed the judgment.

c. On January 10, 2006, the Board of Parole Hearings (Board) found Petitioner unsuitable for parole. The Board deferred the next hearing for two years.

d. Petitioner contends that the Board improperly found him unsuitable for parole.

Petitioner fails to state a prima facie case for relief.

a. When considering parole for an indeterminate life inmate, the Board first determines suitability for parole. If it finds the inmate suitable, the Board establishes a parole release date. Conversely, if the Board concludes that public safety requires a lengthier period of incarceration, a parole will be denied. In making the determination, the Board considers all relevant, reliable information available, including the circumstances of the inmate's social history, past and present mental state, past criminal history, the commitment offense(s), the inmate's attitude toward the crime, and any other information that bears on the inmate's suitability for release. Cal. Code Reg., tit. 15, §2402(b).

b. There are some factors favorable to Petitioner as noted by the Board. In 2000, Petitioner had a minor 128, and Petitioner has had no 115s during the entire time that he has been incarcerated. A psychiatric report dated December 2005 is a favorable report. Petitioner has positive work records. Petitioner has made parole plans. But, the Board advised Petitioner to get the support letters updated.

c. After carefully considering all relevant information, the Board, however, found Petitioner's release from prison would pose an unreasonable risk of danger to society at this time.

d. The Board's decision was supported by some evidence. The Board found that Petitioner's commitment offense indicated unsuitability for parole. The Board found that the offense was carried out in an especially cruel manner. The Board found that the offense was

In re Gary Luther
KCSC #HC93-43

carried out in a manner which demonstrated an exceptionally callous disregard for human suffering in that the victim was found to have had sustained one gunshot wound to the head and three blunt force trauma wounds to the head. The Board found that Petitioner's motive for the crime was very trivial in relation to the offense. Petitioner owed a drug dealer money and he was concerned about that. The Board found that Petitioner's unstable social history associated with drugs and alcohol indicated unsuitability for parole. With respect to Petitioner's institutional behavior, the Board found that Petitioner had programmed in a limited manner considering the amount of time Petitioner had been in. The Board was also concerned that Petitioner failed to upgrade himself educationally and that he had not sufficiently participated in self-help programs. The Board concluded that Petitioner need some therapy in order to face, discuss and understand and cope with stress in a non-destructive manner. According to the Board's finding, Petitioner continues to be unpredictable and a threat to others until some progress is made.

    e. Petitioner argues that the Board cannot continue to rely on the unchangeable fact of the criminal offense. This argument fails. California law does allow the Board to continue to look at the circumstances of the murder and allows the facts of the crime alone to support a sentence longer than the statutory minimum, even if everything else about the prisoner is laudable. See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1070-1071. Even though the Ninth Circuit opined that continuing reliance on the murder itself and past criminality to justify denying parole could result in a due process violation, *Biggs v. Terhune* (9th Cir. 2003) 334 F.3d 910, 917, that dicta is not clearly established federal law. Moreover, the some evidence standard is extremely deferential to the original decision maker. See *Superintendent v. Hill* (1985) 472 U.S. 445, 454.

    Accordingly, Petitioner has failed to state facts sufficient to warrant issuance of a writ of habeas corpus.

        The petition is denied.
Dated: _____AUG 1 0 2006_____

                                            _____
                                            Judge of the Superior Court

2

CALENDAR OF EVENTS

1). On January 10, 2006, Petitioner appeared at his subsequent (2nd) parole consideration hearing, and was denied for two (2) years.

2). On May 25, 2006, Petitioner filed a habeas corpus petition in the Superior Court for Kern County, California, challenging the Board of Prison Hearings (herein after "Board") denial.

3). On August 10, 2006, the Superior Court for Kern County, California, denied Petitioner's habeas corpus petition. (Denial attached hereto).

4). On January 10, 2007, the California Court of Appeals, Fifth Appellate District, denied Petitioner's habeas corpus petition. (Denial attached hereto).

//

//

//

STATE AND FEDERAL CLAIM NUMBER ONE
I.
CALIFORNIA PENAL CODE §3041(a)(b) CREATES A PROTECTABLE
LIBERTY INTEREST AT A PAROLE SUITABILITY HEARING, AND A
"REASONABLE" EXPECTATION OF A RELEASE DATE. THE COMMANDING
WORD "SHALL" CLEARLY ESTABLISHES THIS EXPECTATION.

Under California law, a convicted person sentenced to a term of 15/25 years 'to life' shall be released on parole unless his release would pose an unreasonable risk to public safety or unreasonable risk to society if released from prison. Cal. P.C. §3041(a)(b); Cal. Code of Regs., Title 15, §§2400-2411.

It is well established that the words "...shall be released on parole..." create a liberty interest in parole release therefore constitutional due process standards are mandatory. Moody v. Daggett, 429 U.S. 78, 50 L.Ed.2d 236, 97 S.Ct. 274 (1976). A parole liberty interest involves values protected by the due process clauses of the Fifth and Fourteenth Amendments.

It is well settled that a liberty interest has been created by California law; Perveler v. Estelle, (9th Cir. 1992) 974 F.2d 1132; Bergen v. Spaulding, (9th Cir. 1989) 881 F.2d 719, 721, (citing Greenholtz and Allen); Biggs v. Terhune, (9th Cir. 2003) 334 F.3d 910, 914-916; McQuillion v. Duncan, (9th Cir. 2002) 306 F.3d 895; Sass v. Cal. BPT, 461 F.3d 1123 (9th Cir. 2006).

"Although we have never directly held that California parole scheme creates a protected liberty interest, we have repeatedly assumed that it does." Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994): "today we hold what we have previously assumed. Under the "clearly established" framework of Greenholtz and Allen, we hold that California's parole scheme gives rise to a cognizable liberty interest on parole. The scheme "creates a presumption that parole release will be granted" unless the statutorily defined determinations are made." Allen, 482 at 378 (quoting Greenholtz, 442 U.S. at 12). In In re Deluna, 126 Cal.App.4th 585, 24 Cal.Rptr.3d 643 (2005), held that under Rosenkrantz and McQuillion, parole applicants continue to have a "liberty interest" in parole release.

1

STATE AND FEDERAL CLAIM NUMBER TWO
II.
THE BOARD VIOLATED PETITIONER'S DUE PROCESS AND EQUAL
PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS
OF THE U.S. CONSTITUTION, AND, CALIFORNIA CONSTITUTION ARTICLE
I, Sec. 7(a), WHEN THEY DENIED PAROLE BASED ON A PREDETERMINED
OUTCOME BASED "SOME EVIDENCE" TO BOOTSTRAP THEIR DENIAL OF
SUITABILITY FOR RELEASE ON PAROLE.

The Fifth Appellate Court's semi-post card denial, a denial on the merits,
based on a "modicum of evidence" is contrary to and an unreasonable application
of U.S. Supreme Court law, and, is contrary to California Evidence Code §115,
as set forth herein.

First, under the Merriam-Webster Dictionary, Eleventh Edition, "Modicum":
a small amount. "Some": a certain number or amount. However, "Preponderance"
is defined as: having greater weight, force, influence, or frequency.

The Appellate Courts reliance on a "Modicum of evidence" as a standard of
proof, supporting the Board's denial did not answer the Court's issues in the
ORDER TO SHOW CAUSE.

Petitioner asserts that the "some evidence" standard espoused in
Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768,
86 L.Ed.2d 356 (1985), is not the authority under California law. Under the
holdings in Jurasek v. Utah State Hospital, 158 F.3d 506 (10th Cir. 1998) (Sister
Court), the state may confer more comprehensive due process protections upon
its citizens than does the federal government.

Petitioner relies on California Evidence Code Sec. §115, under "PREPONDERANCE
OF EVIDENCE" standard, (the 'minimum' evidence standard in California), where,
the preponderance of evidence is to be applied to situations where there is no
evidence standard set. (Such as parole suitability hearings).

Therefore the State of California has conferred more, or a greater, evidence
standard upon the Board, by making the 'minimum' evidence standard 'preponderance
of evidence', rather than that espoused in Hill, supra, i.e., "some evidence",

or, "MODICUM" as the Appellate Court has applied.

Hill, supra, derived the "some evidence" standard from Powell, relating only to a disciplinary hearing. Hill, addresses, at page 2774: "requiring a modicum of evidence to support a decision to revoke good time credits." (Emphasis added).

> At page 2774: [3]: "We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." (Emphasis added).

> "This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced..." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S., at 106, 47 S.Ct., at 304.

Citing Hill, the U.S. Supreme Court recently explained in a plurality opinion that it had utilized the "some evidence" standard not as a standard of proof, but rather as a standard of review when examining an administrative record developed after an adversarial proceeding. Hamdi v. Rumsfeld, 542 U.S. 507, 124 S.Ct. 2633, 2651, 159 L.Ed.2d 578 (2004). n.8.

> "We agree with the prevailing view and conclude that Hill addressed only the appropriateness of "some evidence" as a standard of appellate review, not a standard of proof. Therefore, we now seek to determine through our own analysis the appropriate fact-finding standard to be used by the DOC. To determine whether a standard of proof in a particular type of proceeding satisfies due process, the Supreme Court has prescribed a three-factor test that examines: (1) the private interest affected, (2) the risk of erroneous deprivation of such interest, and (3) the government's interest. Matthews v. Eldridge, 424 U.S. 319, 335, 47 L.Ed.2d 18, 96 S.Ct. 893 (1976).

In Carrillo, Supreme Court of Minnesota, 710 N.W.2d 763, 2005 Minn. LEXIS, 424, Filed July 28, 2006, that court relying on Eldridge and Hamdi held that:

> "Taking the Supreme Court's three factors into consideration, we conclude that the "some evidence" standard is inappropriate for use by the DOC at the fact-finding level. We conclude that the "preponderance of evidence" standard better protects against an erroneous deprivation of an inmate's liberty interest in his supervised release date and does not impose an unacceptable burden on the DOC. Therefore, we conclude that a DOC hearing officer must find by a preponderance of the evidence that Carrillo has committed a disciplinary offense before the commissioner can extend the date of his supervised release. Accordingly, we hold that the district court and the court of appeals erred when they denied Carrillo's petition for writ of habeas corpus."

1    The State of California, by Legislative intent, has conferred more, or a

2  greater, evidence standard upon the Board, by making the 'minimum' evidence

3  standard 'preponderance of evidence', rather than that espoused in Hill, i.e.,

4  "some evidence".

5    Petitioner contends that a reasonable understanding of the holding in Hamdi,

6  supra, is that a court will apply the "some evidence" standard to review records

7  to see if there was proof under the preponderance of evidence standard, not that

8  the record of the executive decision maker's only required "some evidence" of

9  proof as claimed by the Appellate Court, when they applied "Modicum" of evidence

10  to determine a standard of proof rather than a standard of review to determine

11  if there was a preponderance of evidence in the record to support the denial

12  of suitability. The Appellate Court incorrectly applied "Modicum of evidence"

13  as a standard of proof to support denial of suitability. Thus their decision

14  was contrary to and an unreasonable application of U.S. Supreme Court law.

15    Petitioner's due process and equal protection rights were violated when

16  the defunct minimally necessary evidence standard, under "some evidence", was

17  applied in place of preponderance of evidence as is mandated by both Evidence

18  Code §115 (see, §115's second paragraph: "Except as otherwise provided by law,

19  the burden of proof requires proof by a preponderance of evidence."), and U.S.

20  Supreme Court precedents.

21                     STATE AND FEDERAL CLAIM NUMBER THREE
                                    III.
22      THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S
       DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS
23     OF THE U.S. CONSTITUTION BY CONTINUOUSLY USING UNCHANGING
       FACTORS TO DENY PAROLE, AND BY NOT ACCURATELY APPLYING
24     "ESPECIALLY CRUEL MANNER".

25    Petitioner will herein establish that his U.S. Constitutional rights of

26  due process are continuing to be violated, by denying parole to Petitioner on

27  his commitment offense. See, Parole Board transcripts. (Exhibit "A", pp. 46, 51-

28  53), and other unchanging factors.

                                    4

1   Petitioner contends that, the California Court of Appeals for the Fourth

2   District has held that the Board of Parole Hearings boilerplate findings

3   characterizing the crime as "exceptionally callous disregard for human suffering",

4   committed in a "dispassionate and calculated manner" were unsupported by any

5   evidence. In In re Richard Shaputis, 37 Cal.Rptr.3d, (See, herein Exhibit "G"),

6   (attached to MOTION FOR JUDICIAL NOTICE), California Court of Appeals, Fourth

7   District, First Division, December 28, 2005. The court relied to a large extent

8   on the reasoning of In re Smith, 14 Cal.App.4th 343 (2003), and In re Scott,

9   (2004) 119 Cal.App.4th 871, 884 (Scott) stating:

10          [T]here is no evidence Shaputis "tormented, terrorized, or injured
            [his victim] before deciding to shoot [her]; or that he gratuitously
11          increased or unnecessarily prolonged her pain and suffering...Was the
            crime callous? Yes. However, are the facts of the crime some evidence
12          that [Shaputis] acted with exceptionally callous disregard for [the
            victim's] suffering; or do the facts distinguish this crime from other
13          second degree murders as exceptionally callous? No. "[Citation.]" (Id.
            at p.367).
14
15  Regarding the findings that Shaputis crime was "dispassionate or calculated",

16  the court found:

17          The BPT's findings that Shaputis acted in a dispassionate and calculated
            manner, in addition to being inconsistent with the jury's verdict
18          acquitting him of first degree murder (cf. Scott, supra, 119 Cal.App.4th
            at pp.889-890), is unsupported by (and indeed may be irreconcilable
19          with) the evidence on which BPT purported to rely. Accordingly, the
            BPT's reliance on this factor was arbitrary and capricious. (Scott,
20          at p.891-892).)

21  Additionally, the court found that the Board's reliance on the unsuitability

22  factor "unstable or tumultous relationships" (Calif. Code of Regs., Title 15,

23  Division II, Art. II, Section §2402(c)(3) to deny parole cannot justify a finding

24  of unsuitability unless the inmate CURRENTLY poses an unreasonable threat to

25  others based on some evidence of a current inability to maintain sobriety. The

26  court stated:

27          We are similarly convinced the BPT's reliance on Shaputis former
            alcoholism - related violence toward his marital partner, the sole
28          evidence conceivably supporting the findings he had "unstable or
            tumultous relationships" with other persons, cannot justify a finding

5

that Shaputis **CURRENTLY** poses an unreasonable threat to others if released on parole absent some evidence there is a **CURRENT** likelihood Shaputis will be unable to maintain his sobriety on the parole. In re Smith, supra, 114 Cal.App.4th at p.372; Cf. Biggs v. Terhune, (9th Cir. 2003) 334 F.3d 910, 916 [although reliance on conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law, where inmate over time continues to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of prior conduct would raise serious questions involving his liberty interest in parole]; accord, Irons v. Warden of California State Prison - Solano (E.D. Cal.2005) 358 F.Supp.2d 936, 947 and fn.2.

Under the holdings of Smith (Second District), Scott I & II (First District), and Shaputis (Fourth District), the Board's boilerplate findings that every crime, regardless of the facts, shows an "exceptionally callous disregard for human suffering" and/or committed in a "dispassionate and/or calculated" manner cannot be sustained.

These labels, placed on virtually every crime (through the use of form/rote language) by the Board, cannot be rubber stamped simply because any life crime is an offensive, antisocial act. The facts must be analyzed carefully before the above aggravated findings can be made.

Utilizing both Smith and Shaputis, the Board's reliance on an individual's former lifestyle, including drug and alcohol addiction, certainly may be argued to be arbitrary in cases where no evidence suggests a **CURRENT** inability to maintain sobriety. As the Shaputis court observed:

> [T]he BPT's conclusion Shaputis remained a danger to society, to the extent it was premised on a former lifestyle that all of the evidence showed was a historical relic, is so lacking in any medical, psychological or behavorial evidentiary support that it is arbitrary and capricious, within the differential standards articulated by Rosenkrantz, 29 Cal.4th 616.

A prisoner's use of drugs is not appropriate consideration in determining parole suitability. See, In re Smith, 109 Cal.App.4th 489, 505.

The First, Second and Fourth District Courts of Appeal have now published cases chipping away at the foundation of the Board's policy of denying parole on the rote/form generalizations and boilerplate findings. Ironically, in spite

1  of these courts decisions the Board seems just as resolute as ever to deny parole

2  based on the crime, criminal priors, any type of ancient social history involving

3  drugs or alcohol. The Board still refuses to recognize the Biggs principles

4  (familiar to readers as a due process denial when the crime and other unchanging

5  factors are repeatedly used as a basis to deny parole in light of strong evidence

6  of rehabilitation).

7      In the case of Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063,

8  1065, 1070. The court reasoned in pertinent part: "While relying upon petitioner's

9  crime as an indicator of his dangerousness may be reasonable for some period

10  of time, in this case, continued reliance on such unchanging circumstances -

11  after nearly two decades of incarceration and a half dozen parole suitability

12  hearings - violates due process because petitioner's commitment offense has become

13  such an unreliable predictor of his present and future dangerousness that it

14  does not satisfy the 'some evidence' standard. After nearly twenty years of

15  rehabilitation, the ability to predict a prisoner's future dangerousness based

16  simply on the circumstances of his or her crime is nil." (Id. at p.1084). See

17  also, Martin v. Marshall (2006) 431 F.Supp.2d at pp.1040-1042, of which, this

18  case involved multiple victims; Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003).

19      Furthermore, Petitioner's offense is no more callous, heinous, atrocious

20  or cruel than the following recent cases from the appellate courts of California.

21      In the decision by the Second Appellate Court of California, Division Eight,

22  in the case of Wen Lee, 2006 DJDAR 13961. Lee went armed with a gun and a box

23  of ammunition. He had decided that if Soong refused to pay, he would kill Soong

24  and then himself. Lee drove 15 minutes to the restaurant and asked Soong for

25  his money. Soong shook his head and said he did not have time to talk. Lee pulled

26  out his gun and fired five times before the gun jammed. He hit Soong twice, who

27  survived the shooting, but one of the bullets hit Soong's wife in the head,

28  killing her. (Note: Two (2) victims and five (5) shots fired). Lee was sentenced

1   to Second degree murder.

2      At pp.13963-13964, the court stated that: "...they were not "atrocious",

3   or at least were no more atrocious than whenever one human being kills another

4   - and were not committed "in an especially heinous, atrocious or cruel manner."

5   The measure of atrociousness is not general notions of common decency or social

6   norms, for by that yardstick all murders are atrocious. (See, In re Scott, supra,

7   119 Cal.App.4th at p.891, "All second degree murders by definition involve some

8   callousness - i.e., lack of emotion or sympathy, emotional insensitivity,

9   indifference to the feelings, and suffering of others"). Rather, the inquiry

10   is whether among murders, the one committed by Lee was particularly heinous,

11   atrocious or cruel. (In re Ramirez (2001), 94 Cal.App.4th 549, 570, disapproved

12   on another point by In re Dannenberg (2005), 34 Cal.4th 1061, 1082-1083, 1100).

13   By that measure, Lee's crimes were more commonplace than egregious."

14      "Comparing Lee to defendants for whom the Board or Governor properly denied

15   parole because the defendants crimes were atrocious is illuminating". Rosenkrantz,

16   29 Cal.4th at p.678; In re Dannenberg, supra, 34 Cal.4th at p.1095; In re

17   McClendon, (2003) 113 Cal.App.4th 315 at pp.321-322; In re Burns, (2006) 136

18   Cal.App.4th 1318 at pp.1327-1328; In re Van Houten, (2004) 116 Cal.App.4th 339,

19   at pp.346, 351, 366; In re Deluna, (2005) 126 Cal.App.4th 585 at p.593; In re

20   Lowe, 130 Cal.App.4th 1405 at p.1414; In re Morrall, (2002) 102 Cal.App.4th 280.

21      Petitioner contends that, in the above case of Wen Lee and the following

22   case of Weider, the State of California has established what offenses and their

23   circumstances constitutes the terminology of "especially or exceptionally callous,

24   particularly egregious, heinous, atrocious or cruel." Wen Lee or Weider did not

25   fall under these categories and neither does Petitioner's commitment offense.

26      In a most recent decision, December 6, 2006, by the Sixth Appellate District

27   Court of California, 2006 DJDAR 15795, In re Bernard John Weider. This appellate

28   court's decision is based on the same subject matter as Petitioner's, in that

1  Weider was denied parole based on the Board's determination that the commitment
2  offense was carried out in an especially cruel and callous manner.

3      In summary of the commitment offense, at page 15795, Weider and his wife
4  Susan separated and she moved in with a man named George Laird. Two years after
5  the separation Weider stopped at a restaurant to get something to eat. Weider's
6  wife Susan and Laird were there and an argument ensued. Weider went to his car
7  and retrieved a .380 caliber handgun and returned to the restaurant, where Weider
8  fired the gun twice at Laird and missed. Laird ran behind the bar and Susan
9  wrestled with Weider. Laird came back to the front of the restaurant, grabbed
10  a bottle from the bar, and hit Weider over the head. "Laird grabbed for the gun
11  and he and Weider struggled over it. Patrons of the bar started to help Laird,
12  and as Weider and Laird struggled on the floor, several shots were fired. Laird
13  received two shots, one a contact wound, at close range and died. Two other
14  patrons were shot, one twice."

15      Weider was convicted of Second degree murder and two counts of assault with
16  a firearm. He was sentenced to an indeterminate term of 15 years to life.

17      At p.15800: "The only remaining factual basis for the Board's 2005 decision
18  is it's conclusion that the commitment offense was carried out in an especially
19  cruel and callous manner in that there were multiple victims, the crime was
20  carried out in a "dispassionate and calculated manner", and "showed a callous
21  disregard, if nothing else, for your community." (§2402, Subd. (c)(1)(A)(B)(D).)

22      At p.15801: "We first note that appellant rightly does not attempt to justify
23  the Board's finding that the crime was committed in a manner that showed a callous
24  disregard or lack of respect for the "community". The standard is whether the
25  crime was committed in a manner that showed, exceptionally callous disregard
26  for human suffering. (§2402, Subd. (c)(1)(D).) There is no evidence of that here."

27      "The Board's finding that the crime was "dispassionate" and "calculated"
28  does not conform to the appropriate standard either. The finding was based upon

1  evidence that Weider "took a weapon into a bar, into a public place". But in

2  deciding whether the crime was particularly heinous, atrocious, or cruel, the

3  Board is to consider whether "(t)he offense was carried out in a dispassionate

4  and calculated manner, such as an execution-style murder". (§2402, Subd.

5  (c)(1)(B).) The murder the Board describes is not at all like an execution-style

6  murder. The fatal wound was delivered during the struggle over the gun. And there

7  was no evidence that Weider conducted himself dispassionately. To the contrary,

8  the evidence shows that he was angry or distraught."

9       Petitioner asserts that, it is established in the record that the victim

10  entered Petitioner's home without permission and started the confrontation.

11  Petitioner was angry, distraught and put into a stressful situation while

12  defending himself in his own home.

13       Petitioner's commitment offense, considering the circumstances of how the

14  crime occurred and what motivated the offense, should not be considered the same

15  in severity as the above cases of Rosenkrantz, Wen Lee and Weider. Therefore,

16  the language of Title 15 C.C.R. §2402 should not and must not be applied to

17  Petitioner.

18       Furthermore, the First, Second, Fourth and Sixth Appellate Courts of

19  California have established by case law, herein, that Title 15 C.C.R. §2402 of

20  "exceptionally callous, particularly egregious or heinous, atrocious or cruel"

21  do not apply to offenses such as Petitioner's.

22       This Honorable Court must at some point in time determine when the U.S.

23  Constitutions Fifth and Fourteenth Amendments due process violations start. One

24  would reason that after the inmate's initial (1st) parole hearing, the crime

25  and other unchangeable factors could not constitutionally be applied as an

26  unsuitability factor for parole. The court would have to reason that the due

27  process violation has become a violation of cruel and unusual punishment under

28  the U.S. Constitutions Eighth Amendment.

1    As several courts have held, that continued use of unchanging factors 'could'
2    result in a due process violation. Petitioner submits that if there is a 'cut
3    off point' where the due process violation would 'finally' occur it would be
4    then reasonable to assume that the due process violation does occur after the
5    first (1st) usage of the unchanging factors, or automatic denials based on
6    unchangeable circumstances would become commonplace.

7    Petitioner contends that, he has been incarcerated for 16 years, he has
8    a very good record while in prison, and Petitioner has applied his rehabilitation
9    goals in a very positive manner. To continuously deny Petitioner parole because
10   of his conduct prior to imprisonment and commitment offense equates to a due
11   process violation under the U.S. Constitution's Fifth and Fourteenth Amendments
12   because Petitioner can never change the 'unchangeable' circumstances used for
13   parole suitability denials.

14   Additionally, the Board continues to deny those who fail to express adequate
15   "insight" into the causative factors of the crime or who fail to express adequate
16   remorse. This presents another legal issue for the courts to resolve: Under Penal
17   Code Sec. §5011(a)(b), the Board shall not require an admission of guilt to any
18   crime as a condition of setting a parole date. Additionally, under Title 15 Sec.
19   §2236, the Board shall not require an admission of guilt, and the prisoner may
20   refuse to DISCUSS the facts of the crime. But until the Board hears adequate
21   (their level) insight and remorse articulated by the prisoner, parole will
22   continue to be denied. The Legislature created a "right" under §5011 and the
23   Board refuses to acknowledge that right (to not discuss the case, crime or guilt).

24   Petitioner asserts that: The Board gave no reference to Petitioner's remorse,
25   or to the fact that Petitioner has taken full responsibility for what happened
26   that tragic evening.

27   To the contrary, the Board stated that Petitioner needs to come to terms
28   with what happened that evening. The fact is, there is nothing to support the

11

Board's conclusion on this matter.

Petitioner has expressed, to the Board, Clinical Psychologist and (CDC) Correctional Counselor, his sorrow and deep regret for his actions that caused so much pain and anguish on all persons involved in this tragedy.

STATE AND FEDERAL CLAIM NUMBER FOUR
IV.
THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BY MIS-APPLYING THE SUITABILITY CRITERIA AT A PAROLE SUITABILITY HEARING.

Petitioner will herein establish that the Board's conclusions are arbitrary and capricious at the least, and do not meet the 'some evidence' principle in denying parole.

Petitioner's "Psychological Evaluation and Life Prisoner Evaluation" will more than establish how Petitioner has changed for the better and rehabilitated himself in the past 15 years.

Petitioner will herein list each of the arbitrary and capricious conclusions by the Board and then answer them with documentation prepared by, (1) a California Board Certified Psychologist, and, (2) a qualified (CDC) Correctional Counselor.

The Board's Unsubstantiated Conclusions

Parole Transcripts, Exhibit "A", at p.46: Inmate Luther would pose an unreasonable risk to society or a threat to public safety.

Parole Transcripts, Exhibit "A", at p.48: Instability in inmate Luther's social history. (Note* If this were true, it was 15 years in the past).

Parole Transcripts, Exhibit "A", at p.48: Inmate Luther programmed in a limited manner. (Note* No where supported in the record).

Parole Transcripts, Exhibit "A", at p.48: Inmate Luther failed to upgrade his education. (Note* Excellent work ethic and marketable skills, and has a high school diploma).

Parole Transcripts, Exhibit "A", at p.49: Inmate Luther needs to upgrade

parole plans. (Note* Parole plans are excellent).

Parole Transcripts, Exhibit "A", at p.50: Inmate Luther needs therapy. (Note* no where supported in the record).

Parole Transcripts, Exhibit "A", at p.52: Inmate Luther needs support to enter society. (Note* Petitioner has above average family support and employer).

The following statements and conclusions from Petitioner's Psychological Evaluation and Life Prisoner Evaluation, will substantiate the facts of why Petitioner should be given a parole date.

Psychological Evaluation, (Exhibit "B", at pp.3-4)

ASSESSMENT OF DANGEROUSNESS

"In considering his potential for dangerous behavior in the institution, inmate Luther remains entirely disciplinary - free. He has changed a great deal in the last 15 years. He has grown in self-awareness, maturity, positive direction in his life, and self-control. As a result, his potential for dangerous behavior is definitely below average in comparison to other inmates." (Emphasis added).

"In considering his potential for dangerous behavior if released to the community, the level of Service Inventory-Revised, was administered. This is an actual measure that assesses criminal background, substance abuse history, academic and vocational achievement, family relationships and other factors. His score places him at the 3.4 cumulative percentile in comparison to other prison inmates. This means that if 100 inmates were released on parole, he would do better than 96% of other parolees. In addition, his excellent institutional adjustment, record of being an outstanding worker and his positive attitude, would indicate that his potential for dangerous behavior in the community is no greater than the average citizen. In fact, based upon his life changes, it is below average in comparison to the average citizen." (Emphasis added).

"At this point in time, there are no significant risk factors in this case."

//

13

CLINICAL OBSERVATIONS/COMMENTS/RECOMMENDATIONS

"There is <u>no</u> evidence of mental or emotional problems in this case that would interfere with granting parole. Inmate Luther <u>does</u> <u>have</u> <u>a</u> <u>strong</u> <u>family</u> <u>support</u> <u>system</u> in the community. His thinking is markedly <u>prosocial</u>. There is <u>no</u> <u>evidence</u> of any <u>antisocial</u> <u>thinking</u> <u>or</u> <u>values</u>. He also is a hard worker with an <u>excellent</u> <u>work</u> <u>ethic</u>. He has viable skills that will enable him to support himself in the community without any problems. He also <u>has</u> <u>current</u> <u>job</u> <u>offers</u> as well as a <u>residence</u> <u>available</u> <u>to</u> <u>him</u>. The prognosis for successful adjustment in this case is <u>excellent</u>." (Emphasis added).

<u>Life Prisoner Evaluation, (Exhibit "C", at p.2)</u>

"<u>Assessment</u>: I foresee <u>no</u> <u>problems</u> with Luther's ability to succeed on parole. He has programmed <u>exceptionally</u> <u>well</u> and has excelled in his work assignment. His prior record is <u>relatively</u> <u>minor</u> in nature and he has <u>no</u> juvenile record. He will have <u>no</u> gang, drug or pattern of violence issues which will inhibit his progress. His <u>parole</u> <u>plans</u> <u>appear</u> <u>solid</u> and he had an array of marketable ability for employment. It is my belief that Luther harnesses a sincere level of remorse for his life crime and will forever hold himself accountable for the adverse affects it had on the victim's family and his own. His attention was not to take a life that tragic day. He accepts responsibility and if focused on reunification with his family and successful people." (Emphasis added).

Petitioner asserts that; The above reports were written by persons that are experts in their fields, and they applied the same information as the Board members. In fact; there is no proof on the record that the BPH members have the same or equivalent professional credentials.

PETITIONER'S SELF-HELP

<u>Parole Transcripts, Exhibit "A", at p.48</u>: The Board stated that inmate Luther has not participated in self-help.

Petitioner asserts that; As stated in his Psychological Evaluation (Exhibit

"B", at p.2), he has been active in Alcoholics Anonymous, has strong Biblical values and studies the principles of the Overcomer's Program. (See, Exhibit "D").

Petitioner wholeheartedly believes and stands by his belief in the word of God (the Bible). Petitioner truly believes that when he began studying the Bible 15 years ago it was a wake-up call "get your life in line with what you believe", and he will always believe that it is his belief system that has dramatically changed his life.

Parole Transcripts, Exhibit "A", at p.34: The Board referring to Petitioner's Psychological Evaluation stated that Petitioner was in "Institutional Remission." (Alcohol/drugs).

Petitioner asserts that; He has chosen not to drink alcohol or use illegal narcotics. It is well established in the CDC prison system that alcohol and narcotics are readily, if not abundantly, available, as Title 15 C.C.R. regulations have a violation section (§3016) on this matter.

Petitioner contends that, there is nothing in the record to support the Board's conclusion that Petitioner poses a risk or danger to society if released. But on the contrary, the Board, at p.24 of Exhibit "A", established that Petitioner has had no disciplinary 115's while incarcerated.

Furthermore, Petitioner's Psychological Evaluation (Exhibit "B"), which was conducted by a professional in his given field, came to the opposite conclusions as that of the Board. This professional, Mr. Macomber Ph.D., stated that before becoming a Psychologist/Psychiatrist he was a California Parole Agent. Therefore, Petitioner's Psychologist/Psychiatrist was more than qualified to assess that Petitioner would not pose a danger to society if released on parole.

Petitioner's due process and equal protection rights under the U.S. Constitutions Fifth and Fourteenth Amendments were violated as the Board did not give Petitioner a fair and impartial hearing, and, they did not take all the evidence before them into consideration (i.e., Psychological Evaluation and

Life Prisoner Evaluation.)

STATE AND FEDERAL CLAIM NUMBER FIVE
v.
THE BOARD OF PAROLE HEARINGS (BPH) VIOLATED PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION BY THE UNCONSTITUTIONAL APPLICATION OF PENAL CODE SECTION §3041(b).

Petitioner will herein establish that Penal Code §3041(b) is being mis-applied to Petitioner's sentence of 15 years "to life" for Second (2nd) degree murder, and therefore has created a further liberty interest and due process/equal protection violation.

Petitioner asserts that; Penal Code §3041 was amended in 1977 by Senate Bill 42 (SB42), to be applied to "for life" prisoners and a minimum of seven (7) years to be served. Senate Bill 42 made ALL "to life" sentences determinate terms (2nd degree murder of 5 years "to life" was repealed and made a determinate sentence of 5, 6 or 7 years). Penal Code §3041(b), by Legislative intent when enacted, was to ONLY be applied to First (1st) degree murder and Kidnapping, and a minimum of seven (7) years to be served, as these were the ONLY life sentences at the time P.C. §3041(b) was enacted.

Therefore, Penal Code §3041(b) was NEVER enacted to be applied, and CANNOT be made applicable to Petitioner's sentence of Second (2nd) degree murder of 15 years "to life", because the California Legislature, under Senate Bill 42 of 1977, established Second (2nd) degree murder as a lesser degree of crime by making this sentence a determinate term of straight 5, 6 or 7 years. Furthermore, Petitioner's sentence of 15 years "to life" for Second degree murder had not been thought of when P.C. §3041(b) was enacted in 1977, as Petitioner's sentence was enacted in 1978 under Proposition 7.

The only forseeable condition where P.C. §3041(b) could be applied to Second degree murder of 15 years "to life" is the inmate's conduct while in prison, of which, may imply a threat to society.

16

The California Voters Ballot Pamphlet for the initiative measure Proposition 7 (See, Exhibit "E"), clearly states that the ONLY change to Second degree murder was the increase from 5, 6 or 7 years to 15 years "to life". Proposition 7 ONLY changed the number of years to be served, i.e., an increase in punishment. There is NO implied difference between the malice as to 5, 6 or 7 years for Second (2nd) degree murder and 15 years "to life". See, In re Jeanice D., (1980) 28 Cal.3d at p.220, for a description of 15 years "to life".

### BRIEF HISTORICAL BACKGROUND OF P.C. §3041(b)

The key to understanding the who, how, and the "exception" to setting a parole date is by tracing the statute back to when it was enacted ... Senate Bill 42 (SB42) of 1977, and what life prisoners the Board was required to hold hearings for under the enacted penal code.

The Uniform Determinate Sentencing Act (DSL) became law in July, 1977 and P.C. §3041(a)(b) were enacted at the same time and required the Board to "normally" set a parole date, P.C. §3041(a), with P.C. §3041(b) providing a narrow exception to setting a parole release date for "particularly egregious offenses."

The class of life prisoners the Board was required to see after the enactment of the DSL on July 1, 1977, were First degree murders and Kidnappers, of whom both these sentences had to serve seven (7) years before becoming eligible for parole. P.C. §3041(a)(b) were enacted 16 months before the Initiative Measure Proposition 7, which increased the murder penalty of First degree murder from "life" to "25 years to life" and changed Second degree murder from a "determinate" term of 5, 6 or 7 years to an "indeterminate" sentence of "15 years to life".

Before Proposition 7 was enacted in November, 1978, the Board was required to see two (2) classes of life offenses of First (1st) degree murder and Kidnappers. P.C. §3041(a) required the Board to "NORMALLY" set parole release dates for those two (2) classes of life sentences. The "EXCEPTION" to setting a parole release date is when §3041(b) is applied, offenses that were such in

17

gravity, so especially grave and so particularly egregious that public safety concerns required a longer period of incarceration for these individuals and a parole date could not be set.

In People v. Anderson, 6 Cal.3d 628 (1972), the California Supreme Court held that the "then" California death penalty law was impermissibly cruel, and 128 inmates whose sentences were fixed at death would now have their sentences reduced to "life" with the possibility of parole. (Note* There was no life without the possibility of parole in California at that time). See, e.g., In re Stanworth, (1982) 33 Cal.3d 176. In 1966 Stanworth was sentenced to death following a plea of guilty to two (2) counts of First (1st) degree murder. Stanworth was one of the prisoners who came off of death row and was given a term of life with the possibility of parole. In 1979 Stanworth was given a parole date after 13 years and served a total of 17 years at the time of his release on parole. See also, McQuillion v. Duncan, (Ninth Circuit Court of Appeals, No. 03-55702, D.C. No. CV-98-03680-DT, September 28, 2003).

When the DSL was enacted July 1, 1977, this group/class of 128 inmates, that came off of death row, after serving 7 years were eligible for parole, the circumstances of their offense(s) were of such gravity "particularly egregious" in nature that public safety concerns allowed the Board to deny setting a parole release date under §3041(b).

The offense(s) of these inmates that came off of death row were not comparable to "normal" (1st) degree murder or kidnapping offenses, under the provisions of the Uniform Proportionate Punishment for base terms in the Boards matrix guidelines for similar offenses. All of the 128 inmates convictions had "special circumstances" that warranted the death penalty.

Penal Code §3041(a) requires the Board to establish criteria not only for the setting of a parole release date, but also criteria for the "EXCEPTION" to setting a parole date under §3041(b) and §3041.5(b)(2). This criteria to the

exception is implemented in the Board's 1978 amended regulations, Title 15 C.C.R. §2281 (c)(1)(A)(B)(C)(D), et seq..

The first amendment of subsection (c) filed 6/28/79, (Register 79, No. 26): "Circumstances tending to show unsuitability", "the prisoner committed the offense in an especially heinous, atrocious or cruel manner."

The language and circumstances were adopted from Proposition 7's section §190.2(a)(14). Please take special notice: P.C. §190.2 ONLY applies to inmates with a sentence of "life without the possibility of parole" or "the death penalty", (See, Exhibit "E"), NOT (1st) of (2nd) degree murder with the possibility of parole. Compare: Title 15 C.C.R. §2281 and §2402.

The circumstances tending to show unsuitability ... are the EXCEPTIONS to setting a parole release date, which, prior to the sentences of 15/25 years to life of Proposition 7 (1978) had a VERY NARROW application. The "EXCEPTION" was not normally applied but was meant to be applied to the 128 inmates that came off of death row.

The Board is violating the due process clause by unconstitutionally applying the exception, §3041(b) to ALL "to life" prisoners of 1978 Proposition 7. By applying P.C. §3041(b) to ALL "to life" inmates, thus making the EXCEPTION the NORM, the Board has destroyed the proportionality contemplated by P.C. §3041(a).

By Legislative intent P.C. §3041(b) CANNOT be applied to ALL (1st) or (2nd) degree murder sentences (15/25 years to life), "UNLESS" the exception is proven.

In summary, the enactment of P.C. §3041(a) of 1977, provided that parole dates shall normally be set for First (1st) and Second (2nd) degree murder sentences, with subsection (b) serving as the NARROW EXCEPTION and ONLY being applied to offenses that are not of the "normal" first degree murder... The 128 inmates that came off of death row had special circumstances that the exception was intended to be applied to. In re L. Van Houten, 116 Cal.App.4th 339 (2004).

In People v. Thompson, 29 Cal.Rptr.2d 847 (Cal.App.2 Dist. 1994), a case

19

involving a fire bombing of a residence after midnight and a 2 year old child was killed, the court held that:

> "Given this deference to the legislature, defendant is wise not to challenge the sentence imposed by the Legislature for those who are convicted under Section 12310. That branch has determined this crime is particularly dangerous to human life and those who are convicted of causing death by igniting a destructive device should be sure to suffer a penalty separate and apart from the murder statutes. The penalty challenged herein is calculated to advance a critically important social policy for the protection of the public at large, i.e., the deterrence of a PARTICULARLY EGREGIOUS type of life-endangering criminal conduct." See also, People v. Isitt, (1976) 55 Cal.App.3d 23, 31, 127 Cal.Rptr. 279; People v. Laursen, (1972) 8 Cal.3d 192, 198, 104 Cal.Rptr. 425, 501 P.2d 1145.

> At pp.851-852: "As noted above, the legislative determination has made that the crime involved in this case is a more serious crime than premeditated murder and deserves the augmented penalty associated with it. The use of destructive devices, Molotov cocktails in this instance, which can inflict indiscriminate and multiple deaths, marks defendant as a greater danger to society than a person who premeditates the murder of a single individual." (Emphasis added throughout).

It is apparent that the Court followed the legislative intent for cases that were particularly egregious in sentencing Thompson. As asserted by Petitioner above, P.C. §3041(b) was enacted by the Legislature for such purposes, the EXCEPTION to, separate and apart from the murder statutes. Thompson, [3] at 850.

As is established under the facts presented above, Petitioner's commitment offense simply cannot be so particularly egregious as to justify the denial of parole pursuant to P.C. §3041(a)(b).

A crime is "particularly egregious" when elements of "special circumstances" were found that would authorize a sentence of life without the possibility of parole or the death penalty. In re Leslie Van Houten, supra. In Van Houten, the jury found special circumstances to be true at the original trial.

There were NO special circumstances found to be true at Petitioner's trial, therefore, the Board CANNOT apply subdivision (b) of §3041 to his suitability hearing. Additionally, several courts have used the language of "ax murder", "execution style murder" when compared to "normal", "ordinary run", "common scenario", "conventional" when addressing particularly egregious murder cases.

20

## PETITIONER'S OFFENSE

1
2      Unlike the offenses in In re Van Houten, Wen Lee, Weider, Rosenktantz,

3  Dannenberg, McClendon, Burns, Deluna, Lowe and Morrall, (See Petitioner's pp.8-

4  9 of this instant petition for case citations). At page 13, and, 51-53 of Exhibit

5  "A": Petitioner was convicted of killing a man that entered Petitioner's home,

6  uninvited. Petitioner told the victim to get out of his home and at that point

7  a fight ensued. Petitioner grabbed his gun from under the bedroom bed and struck

8  the victim on the side of his head and the gun discharged killing the victim.

9  Petitioner then called 911.

10                  STATE AND FEDERAL CLAIM NUMBER SIX
                                 VI.
11     THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S DUE PROCESS
       AND EQUAL PROTECTION RIGHTS UNDER THE U.S. CONSTITUTIONS.
12     FIFTH AND FOURTEENTH AMENDMENTS BY APPLYING UNCONSTITUTIONALLY
       ENACTED TITLE 15 C.C.R. §§2400-2411 TO OVER-RIDE AND CONTROL
13     PENAL CODE §3041(a)(b).

14     Petitioner contends that, the Board enacted Title 15 C.C.R. §§2400-2411

15  rules and regulations on September 8, 1981, Register 81 No. 37. These NEW

16  regulations are parole consideration criteria and guidelines, creating NEW

17  procedural provisions and mandates for the sentences of 15/25 years to life,

18  enacted by the initiative measure Proposition 7 of November 8, 1978.

19     The Legislature gave the Board permission to write rules and mandates, but,

20  under Gov. Code §11342.2 "...no regulation adopted is valid or effective unless

21  consistent and not in conflict with statutes or constitution to effectuate the

22  purpose, of the regulations."

23     The Board cannot apply Title 15 C.C.R. §§2400-2411 to the sentences of 15/25

24  years to life, this would be a violation of California Constitution Article II,

25  Section §10(c), as Proposition 7 did not give permission for amendments without

26  voter approval. See, People v. Cooper, (2000), 101 Cal.Rptr.2d 1, "The California

27  Supreme Court has held that the enactment of P.C. §2933 could not be inclusive

28  to Proposition 7 Briggs initiative without voter approval and was in violation

of California Constitution Article II, §10(c)." (Emphasis added). See also, In re Oluwa, (1989), 207 Cal.App.3d 447, "A statute enacted by the electorate as an initiative measure may be changed ONLY with approval of the electorate unless the initiative measure itself permits amendment or repeal without voters approval. Proposition 7 did not allow such amendment or repeal without voter approval." (Emphasis added). See, Proposition 7, Briggs initiative, Exhibit "E".

The Board, by applying the unconstitutionally enacted Title 15 C.C.R. §2402 and its language of "particularly egregious", etc., to Petitioner's sentence/commitment offense, the Board is violating Petitioner's U.S. Constitutional rights of due process and equal protection under the Fifth and Fourteenth Amendments.

Petitioner further contends that, the Board is mis-applying P.C. §3041(b), in conjunction with an unconstitutionally enacted regulation of Title 15 C.C.R. §2402 (effectively §§2400-2411), to circumvent the application of P.C. §3041(a), setting Petitioner's term under uniformity of terms.

STATE AND FEDERAL CLAIM NUMBER SEVEN

VII.

THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION WHEN THEY FAILED TO CONSIDER A PAROLE RELEASE DATE UNDER P. C. SECTION §3041(a), (SEPARATE AND DISTINCT TREATMENT OF A "CLASS OF ONE").

For an equal protection claim to proceed Petitioner must allege specific facts in support of his claim. A habeas petitioner has the burden of alleging specific facts that show a federal claim is presented, or the petition is subject to dismissal. Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995). Conclusory allegations do not warrant habeas relief. Id. at 204.

Petitioner's allegations are not conclusory, they state a prima facie equal protection claim under both the California and U.S. Constitution.

The U.S. Constitutions Fourteenth Amendment Equal Protection Clause provides that no State shall deny to any person "the equal protection of the laws." See

22

1    also, California Constitution Article I, Sec. 7(a). The Equal Protection Clause

2    ensures that "all persons similarly situated should be treated alike." City of

3    Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). To prevail on an

4    equal protection claim, Petitioner must initially show that he was treated

5    differently from other similarly situated persons. City of Cleburne, supra, 473

6    U.S. at 439: Fraley v. U.S. Bureau of Prisons, 1 F.3d 924, 926 (9th Cir. 1993).

7        The mere fact that some inmates convicted of second degree murder may have

8    been paroled sooner than Petitioner does not establish the basis for a federal

9    equal protection claim. See, Sturm v. California Adult Authority, 395 F.2d 446,

10   448-49 (9th Cir. 1967) (holding that "the fact that other prisoners have had

11   their sentence reduced, or been granted parole, affords no ground for complaint

12   by petitioner.")

13       However, Petitioner's equal protection claim lies elsewhere, other than

14   a mere comparison between an inmate released earlier or paroled sooner than

15   himself, as set forth herein.

16                      **EQUAL PROTECTION UNDER "CLASS OF ONE"**

17       In the case of In re MIKAEL SCHIOLD, Court of Appeals, First Appellate

18   District, Division Five, Case No. A103107, attached hereto with MOTION FOR

19   JUDICIAL NOTICE, as Exhibit "H". (With reference to numbered paragraphs).

20       Schiold was transferred to the country of Sweden, under the "SETTLEMENT

21   AGREEMENT AND FULL AND FINAL RELEASE OF ALL CLAIMS", on habeas corpus. Schiold

22   and Respondents entered into an "agreement" transferring Schiold to Sweden.

23   (Paragraph #4 of Exhibit "H").

24       Case No. A103107 was agreed to as "stayed" pending Schiold's transfer.

25   (Paragraphs #5,6,7, of Exhibit "H").

26       Explicitly at paragraph #8: "Releasor (Schiold) agrees that he will be held

27   in custody by the government of Sweden until January 1, 2007."

28       Page 5, paragraph #16 (Exhibit "H"), establishes that: the agreement and

1  settlement, in order to stay the case, was signed by the Supervising Deputy

2  Attorney General, Anya Binsacca, dated 10/22/2003.

3      Petitioner asserts that the State of California in collusion with the

4  Attorney General's Office and the Board did in fact violate the equal protection

5  clause of the Fourteenth Amendment of the U.S. Constitution, and, California

6  Constitution Article I, Sec. 7(a), by "setting an immutable release date" for

7  Schiold, when his term was set without being found suitable under §3041(b) and

8  going directly to §3041(a).

9      The language in paragraph #8 of page 3 (Exhibit "H"), of the settlement

10  expressly states that "he will be held in custody of the government of Sweden

11  **UNTIL** January 1, 2007." Petitioner asserts that this date, January 1, 2007,

12  established a 'term setting' under P.C. §3041(a). (Emphasis added).

13      A foreign national (Schiold) is being treated distinctly different than

14  'all' U.S. Citizens in California serving a sentence of life with the possibility

15  of parole. Petitioner is being treated distinctly different than Schiold because

16  he cannot be transferred to another country, and all similarly situated prisoners,

17  thus creating separate and distinct "classes" of inmates for release criteria.

18      The fact that Schiold was found suitable by the Board is irrelevant to the

19  claim herein, as the Governor over-ruled the Board's determination and found

20  Schiold to be unsuitable, which nullified the Board's finding of suitability.

21  See, paragraphs #2,3,6, (Exhibit "H"). Schiold's term was set at January 1, 2007.

22      The most basic requirement for a claim of violation of equal protection

23  under the Fourteenth Amendment of the U.S. Constitution lies on the issue of

24  non-equal treatment of a "CLASS", or, a showing of separate and/or distinct

25  difference in treatment, both criminally and civilly, among groups or "CLASSES"

26  of persons.

27      The U.S. Supreme Court has establish a "class of one" in the case of Village

28  of Willowbrook v. Olech, 528 U.S. 562, 145 L.Ed.2d 1060, 120 S.Ct. 1073 (2000)

1   at pp.1074-75: "We granted certiorari to determine whether the Equal Protection

2   Clause gives rise to a cause of action on behalf of a "class of one" where the

3   plaintiff did not allege membership in a class or group." (527 U.S. 1067, 120

4   S.Ct. 10, 144 L.Ed.2d 841 (1999).):

5          "Whether the complaint alleges a class of one or a class of five is
           of no consequence because we concluded that the number of individuals
6          in a class is immaterial for equal protection analysis."

7          Our cases have recognized successful equal protection claims brought by

8   a "class of one", where the plaintiff alleges that he/she has been intentionally

9   treated differently from others similarly situated and that there is no rational

10  basis for the difference in treatment. Sioux City Bridge Co., v. Dakota County,

11  260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pittsburgh Coal Co.

12  v. Commission of Webster City, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688

13  (1989). "In so doing, we have explained that 'the purpose of the equal protection

14  clause of the Fourteenth Amendment is to secure every person within the State's

15  jurisdiction against intentional and arbitrary discrimination, whether occasioned

16  by express terms of a statute or by its proper execution through duly constituted

17  agents." Sioux City Bridge Co., supra, at p.445, 43 S.Ct. 190 (quoting Sunday

18  Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352, 38 S.Ct. 495 (1918).)

19  "It is clearly established that a state violates the equal protection clauses

20  when it treats one set of persons differently from others who are similarly

21  situated." Wheeler v. Miller, 168 F.3d 241, 252 (5th Cir. 1999).

22         Petitioner has established separate treatment, discrimination, and the

23  Board's failure to follow U.S. Supreme Court precedents, thus their failure to

24  set Petitioner's term, as was done to Schiold, violates both the California and

25  U.S. Constitutions Equal Protection Clauses.

26                          FAILURE TO CONSIDER TERM SETTING

27         At no time during the hearing, nor at any time during Petitioner's

28  incarceration has the Board considered the determinate term that Petitioner would

                                    25

serve, as calculated by the unconstitutionally enacted Title 15 C.C.R. §2404 (Exhibit "F"), Matrix or the time he has actually served as factors in the suitability equation. The Court of Appeals in, In re Ramirez, (2001) 94 Cal.App.4th 549, at 569 held:

> "The Board cannot ignore the determinate term prescribed for a commitment offense when it considers the gravity of the crime as a factor weighing against a finding of suitability for parole. The Board must make its determination 'in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public.' (P.C. §3041(a).) Determining what would be a 'uniform' term for an inmate serving a determinate term for offenses that include concurrent determinate terms is not an exact science. However, the Board should strive to achieve at least a rough balance between the gravity of the offense, the time the inmate has served, and the sentences prescribed by law for the commitment offense."

At page 570, the court said:

> "The Board must also consider the length of time the inmate has served in relation to the terms prescribed by the Legislature for the offenses under consideration, in order to arrive at a "uniform" term as contemplated by P.C. §3041(a)."

The gravity of Petitioner's offense must be measured not in terms of the life maximum potential, but in relation to the determinate terms prescribed for such offenses in 15 C.C.R. §2403(c). The Board must consider the appropriate determinate term that would be set and the time he has already served. The Board has failed to follow the criteria of §2403(c). (Note* Although Petitioner asserts that §§2400-2411 cannot be applied to him the Board is still in violation by not complying with rules and regulations that they are applying.)

## FAILURE TO FIX PRIMARY TERM

At no time during Petitioner's incarceration has the Board ever held a hearing to fix Petitioner's 'primary term' on his indeterminate sentence. A 'primary term' is not set in conjunction with or dependent upon a parole hearing. In re Rodriguez, (1975) 14 Ca.3d 639; People v. Scott, (1984) 150 Cal.App.3d 910, 918-919. Petitioner has a right to have his term fixed proportionately to his offense and his culpability.

1    The Los Angeles County Superior Court, on June 26, 2006, In re Robert

2    Rosenkrantz, Case N. BH003529, attached as Exhibit "I" to MOTION FOR JUDICIAL

3    NOTICE, specifically at page 3, lines 14-15 establish that the Board set

4    Rosenkrantz term, "On September 9, 1999, petitioner was found <u>unsuitable for</u>

5    <u>parole</u> but the panel set his prison term." A June 30, 2001 date was set for

6    release. (Emphasis added).

7    Evaluating proportionality does not hinge on the life maximum, but is

8    measuring the time actually served with the sentence deemed appropriate by the

9    Board's sentencing regulations. The Board cannot abdicate this responsibility

10    either by saying it has no authority to fix terms (See, Schiold & Rosenkrantz),

11    or by subsuming term-fixing under the parole function. Petitioner is entitled

12    to the fixing of his primary term as an ultimate, immutable release date, under

13    the Equal Protection (CLASS OF ONE) of the Fourteenth Amendment. See also, In

14    re Rodriguez, supra; People v. Duran, (1983) 140 Cal.App.3d at 502-503; People

15    v. Rodriguez, (1977) 19 Cal.3d 221, 230; Rosenkrantz, supra.

16    In McGinnis v. Royster, 93 S.Ct. 1055 (1973) the court held: at P.1057 that:

17       "each inmate has both a 'minimum' parole date, which is the earliest

18       date on which he 'may' be paroled at the discretion of the Parole Board,
         and a 'statutory release' date which is the earliest date he 'must'
         be paroled by the Parole Board. (fn.3), "he also has a maximum

19       expiration date which is the date of the maximum sentence to which
         an inmate can be held if he receives no good time credits at all."

20
21    The case refers to an 'indeterminate sentence' and establishes that there

22    are actually three (3) dates to such a sentence; (1) the minimum parole date,

23    (2) the statutory release date, (3) the maximum expiration date (i.e., death).

24    While P.C. §1170 et seq., apply to determinate sentences, the current

25    provisions of §3041 governing parole for inmates serving indeterminate terms

26    were added as part of the bill enacting the Determinate Sentencing Law, and were

27    intended to serve the same purpose as the determinate sentencing provisions.

28    (Stats., 1976 Ch. 1139, Sec. 281, p.5151; In re Stanworth, (1982) 33 Cal.3d 176,

182). Our Supreme Court has made it clear that the 'uniform terms' called for

27

by section §3041(a) are analytically equivalent to determinate sentences imposed under §1170 et seq. (People v. Jefferson, 21 Cal.4th 86, 96).

Apparently, the State of California only follows the law and sets a life prisoner's term when it is convenient, to avoid or terminate legal actions or in an arbitrary manner, with no regard to violating due process and equal protection rights.

### CONCLUSION

There is no articulable evidence to support the Board's conclusion that Petitioner still poses an unreasonable (current) risk to society if paroled. The Board appears to have recited rote/form language without regard to the facts and evidence before it and with disregard for Petitioner's right to individualized consideration and due process.

The Board has effectively amended P.C. §3041(a)(b) and the legislative intent has been circumvented. The Board has unreasonably applied U.S. Supreme Court law, when using unconstitutionally enacted rules and regulations to over-ride the language in Greenholtz and Allen: SHALL be released on parole. The Board's decisions/conclusions are clearly contrary to established U.S. Supreme Court law, and the California Constitution's Referendum Process, thus contrary to the holdings in Greenholtz and Allen's language of due process rights to a fair, impartial and meaningful hearing.

The Board's finding that Petitioner demonstrated a callous disregard for human suffering was "blind to the record", (In re Scott, supra, 119 Cal.App.4th at p.892), which shows no evidence of suffering above that inherent in any death. The Board's assertion that the motive was "trivial" is directly refuted by the Board's Matrix which identifies the circumstances of this crime as being unexceptional and commonplace. The Board's finding regarding "threat to society" is completely unsupported given Petitioner's more that fifteen years of performance as a model prisoner.

28

Petitioner has been diligently devoted to self-help improvement while incarcerated, has marketable skills and has realistic parole plans. The record provides no reasonable grounds to reject, or even challenge, the findings and conclusions of the psychologist and counselor concerning Petitioner's dangerousness. (In re Smith, supra, 114 Cal.App.4th at pp.343, 369).

There is nothing in the record that the Board made any effort to compare Petitioner's crime to others. Since parole is the rule and not the exception, (Smith, supra, 114 Cal.App.4th at p.351), the Board is constitutionally required to "weigh the inmate's criminal conduct not against ordinary social norms, but against other instances of the same crime or crimes." (In re Ramirez, supra, 94 Cal.App.4th at p.570). The Board's "predetermined conclusion in search of justification", (In re Caswell, (2001), 92 Cal.App.4th 1017, 1030), is amply demonstrated by its findings that the crime was trivial. "It could not be both." (Scott, supra, 119 Cal.App.4th at p.892). This appears, by the Board, to be no more than a reading of form/rote language without reference to Petitioner's case, apparently to provide "a post hoc rationalization for a decision already made". (In re Rosenkrantz, (2000), 80 Cal.App.4th at p.427). In fact, the totality of the record, not just Petitioner's years of positive programming and model behavior, demonstrates that Petitioner has done nearly everything possible under the circumstances, and everything society can expect, to justify a chance on parole and to demonstrate his rehabilitation.

The Board has continued to violate Petitioner's due process and equal protection rights by incorrectly/unconstitutionally applying P.C. §3041(b) to Petitioner's suitability and his offense.

The Board has violated Petitioner's due process and equal protection rights under the U.S. Constitutions Fifth and Fourteenth Amendments by discriminating against Petitioner in not setting his term of incarceration as was done to other similarly situated inmates.

The unsuitability factors do not out weigh the suitability factors. In fact, the record establishes that there are NO unsuitability factors supported by the record.

Respectfully submitted,

*Gary B. Luther*

Gary B. Luther


DECLARATION

I, Gary B. Luther, declare under penalty of perjury that the foregoing is true and correct, executed this _31_ of _January_ , 2007, at Soledad State Prison, Soledad, California.


*Gary B. Luther*

Gary B. Luther

## PRAYER

Wherefore, Petitioner respectfully requests that this Honorable Court declare/order that:

1). Penal Code §3041(a)(b) does create a protectable liberty interest at a parole suitability hearing for an expectant release date:

2). Respondents show cause why Petitioner is not entitled to the relief requested:

3). That the "some evidence" standard is being mis-applied in the State of California and a "preponderance of evidence" standard must be applied to show that Petitioner is unsuitable for parole:

4). There is no evidence in the record to support that Petitioner is a current risk to society:

5). There is no evidence in the record that Petitioner is unsuitable for parole and a parole release date must be set:

6). The language in Penal Code §3041(a) is the only true and constitutionally legal requirement for a parole release date consideration:

7). The Board set a release date consistent with Petitioner's sentence as is established in Penal Code §3041(a), and that the Board set Petitioner's term as was demonstrated in the cases of Schiold and Rosenkrantz:

8). That Penal Code §3041(b) is not accurately being applied to Petitioner's Second degree sentence of 15 years to life:

9). Title 15 C.C.R. §§2400-2411 are in direct violation of California Constitution Article II, §10(c) Referendum Process, and is violating Petitioner's U.S. Constitutional rights under Due Process and Equal Protection under the Fifth and Fourteenth Amendments:

10). Petitioner's conviction must be proven to be "exceptionally callous" under the standard of "special circumstances", at trial, before the Board can apply subd. (b) of Penal Code §3041, as is established by Legislative intent:

31

1

2      11). If the Board does not set a parole release date for Petitioner, that

3  this Honorable Court, under the U.S. Supreme Court's Constitutional grant of

4  power, issue an order for Petitioner's release on parole forthwith.

5                                        //

6                                        //

7                                        //

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28